**DIVISION OF FAMILY SERVICES,**
Respondent Below, Cross–
Appellant,

v.

**Ralph C. HARRISON, Sr.,\* Petitioner**
Below, Cross–Appellee,

and

**Bryce and Laurissa Butler, Petitioners**
Below, Cross–Appellees,

and

**Darlene M. Harrington, Respondent**
Below, Cross–Appellee,

and

**Court Appointed Special Advocate,**
Cross–Appellee.

No. 319, 1997.

Supreme Court of Delaware.

Submitted: May 18, 1999.
Decided: Oct. 28, 1999.

---

\* Pseudonyms have been used to protect the identity of the parties to this appeal. *See*

Supr.Ct.R. 7(d).

Joelle P. Hitch, Deputy Attorney General, Department of Justice, Wilmington, Delaware, for respondent below/cross-appellant, Department of Services for Children, Youth and Their Families, Division of Family Services.

Ralph C. Harrison, Sr., Wilmington, Delaware, pro se petitioner below/cross-appellee.

Francine R. Solomon, Wilmington, Delaware, for petitioners below/cross-appellees, Bryce and Laurissa Butler.

Darlene M. Harrington, Newark, Delaware, pro se respondent below/cross-appellee.

Loreto P. Rufo, of The Bayard Firm, Wilmington, Delaware, for cross-appellee, Court Appointed Special Advocate.

Before VEASEY, C.J., and HOLLAND and BERGER, JJ.

VEASEY, Chief Justice:

This is an appeal from a final judgment of the Family Court involving a child guardianship matter. The Division of Family Services ("DFS") contends that the Family Court erred, as a matter of law, in granting foster parents guardianship over a minor child. DFS argues that, without its consent, foster parents do not have standing to seek or contest custody awards for foster children placed in their homes. DFS also claims that the Family Court erred in relieving the foster parents of the burden of proof on their petition for guardianship. Finally, DFS alleges that the Family Court erred in finding the child was "dependent."

 We hold that foster parents do have standing to petition for guardianship over children placed in their care by DFS. We also hold that the trial court properly placed the burden of proof upon DFS and the natural father to show what progress he had made before the court would return to him custody of the child. We decline to decide whether a "de facto" adoption was created by the court's standard of review for future return of custody proceedings, as this claim is not ripe for appellate review. Finally, we find that the Family Court did not err in determining that the child was dependent. Thus, we affirm the judgment of the Family Court, awarding guardianship to the foster parents.

### Facts

David Lawrence Harrison was born on September 11, 1993, the natural child of Darlene M. Harrington ("Mother") and Ralph C. Harrison, Sr. ("Father"). David spent the first two months of his life in the care of Mother and the second two months with Father. On January 25, 1994, the Family Court learned that Mother was addicted to prescription drugs and that Father was incarcerated for abusing Mother. Accordingly, the court found that David was "dependent" under 10 *Del.C.* § 901(8), and issued an ex parte order granting custody to DFS. Thereafter, DFS took custody of David and placed him with his foster parents, Bryce and Laurissa Butler, with whom David resides today.

In March 1995, DFS decided that Mother could provide minimally adequate care for David, and that David should be returned to her, with DFS retaining custody. In response, the Butlers, Mother's sister

(Christine Harrington) and Father filed a dependency/neglect petition against Mother and DFS, along with a motion to stay David's return to Mother. The Family Court dismissed the dependency/neglect petition, but granted the motion to stay David's return to Mother. Later, the court ordered custody of David to continue with DFS, with placement in the home of the Butlers. The court found that David continued to be dependent and/or neglected, and that it was in David's best interests not to be returned to Mother.[1]

Several months later, the Family Court held a follow-up hearing to reconsider DFS' decision to return David to Mother. The court determined that Mother had failed to comply with the court's previous order and that she likely was still under the influence of drugs. The court found that David continued to be dependent/neglected and ordered custody of David to remain with DFS and the Butlers. At the hearing, the court also learned that Father had been released from prison and that DFS had initiated with him a gradual reunification program. After hearing from David's Court Appointed Special Advocate ("CASA"), the court granted the CASA's recommendations that Father be given six months to fulfill the reunification requirements and that he submit to evaluations.[2]

The court also considered, for the first time, the Butlers' petition for guardianship that was filed without the consent of DFS. The Butlers intended to adopt David, who then had resided with them for over two years. In light of DFS' past actions and their misgivings about Father, the Butlers felt that DFS could not be trusted to act in David's best interests and that the reunification program with Father was improper. The court stayed the guardianship petition,

so that custody would remain with DFS as it worked with Father to determine whether he was able to provide adequate care to David. While the Court agreed with the CASA that permanent placement should be made as soon as possible, it held that Father must be afforded an opportunity to show that he could care adequately for David. Accordingly, the court ordered a review in six months.[3]

The Family Court held three subsequent hearings to review its dependency/neglect determination and to rule on the Butlers' petition for guardianship, resulting in the following relevant factual findings.[4]

Father served approximately 28 months in prison for resisting arrest. This conviction stemmed from allegations that he assaulted and sexually abused Mother, charges that Father denied and that the State eventually dropped. Father was totally disabled from any type of gainful employment, but was able to carry out his patenting duties. He received food stamps and social security and expected $50,000 for a worker's compensation claim. Father planned to move to Florida in the future, and would take David with him were he to gain custody. Father completed a Michigan Alcoholism Screening Test, and the results indicated that he was an alcoholic. Although Father generally denied being an alcoholic, on one occasion he admitted that he was a recovering alcoholic. Father refused to attend any Alcoholics Anonymous meetings and had not met the four indicators of successful substance abuse treatment.

For over a year, Father and David had weekly visits together. David appeared to enjoy spending time with Father. Following some of the visitation periods, however,

1. *See [Harrison] v. DFS*, Del.Fam., C.A. No. CN93–11141; B8172; CN88–8858; CN95–07233, 1995 WL 807182 (Dec. 7, 1995) (Order). To protect the identity of the parties to this appeal, pseudonyms have been used in the case captions of the proceedings below. *See* Supr.Ct.R. 7(d).

2. *See In the Matter of Minor Child [David Harrison]*, Del.Fam., C.A. No. CN93–11141;

B8172; CN88–8858; CN95–07233 (Aug. 23, 1996) (Order).

3. *See id.*

4. *See In Re: The Matter of [David Lawrence Harrison], A Minor Child*, Del.Fam., C.A. No. CN95–07233; CN93–11131 (June 25, 1997) (Order).

the Butlers reported that David began masturbating excessively in their presence. According to the Butlers, David told them his Father had taught him how to masturbate. The Butlers also reported other disturbing events that suggested that Father was abusing David sexually.

Father denied all allegations of sexual abuse. According to Father, David told him that Mr. Butler had taught him to masturbate, an allegation that Mr. Butler denied. A family crisis therapist for DFS investigated the reports, but concluded that David had not been abused sexually. Allan DeJong, M.D., a hospital physician, physically examined David, but found no evidence of sexual abuse. In addition, Wilmington Police were unable to substantiate the Butlers' complaints, and the investigation was closed.

Jonathan Baylin, Ph.D., a psychologist at Delaware Guidance, evaluated Father on three occasions. He expressed concern over Father's parenting abilities, personality, past alcoholism, and guarded approach to the evaluation. Dr. Baylin determined that Father showed signs of paranoia and delusional behavior. After the final evaluation, Dr. Baylin concluded that it was not in David's best interests to be placed in Father's custody, and recommended placement with the Butlers. On the other hand, G.P. Kratsa, M.D., a psychiatrist, evaluated Father and concluded that he would be able to parent David, and that David's behavior was normal for a child undergoing a three-year period of transition.

Father completed some counseling and parenting classes. The three family therapists who evaluated Father all believed that he acted appropriately with David and that David was comfortable in Father's care. Nevertheless, the therapists expressed concern that David's masturbation was not normal behavior, and one thera-

pist refused to recommend reunification with Father without further review.

Mother testified that she was not comfortable with the Butlers being guardians and would prefer that Father have custody, although Mother and Father did not get along well. Mother took responsibility for Father's violent acts in the past. The Butlers testified that they wanted to adopt David, but desired that David would continue contact with his natural parents. Mr. Butler stated that David should not be returned to Father because of Father's inability to parent and his history of violence and sexual abuse toward Mother. The CASA recommended that David remain with the Butlers, with continued visitation by his natural parents.

### The Final Decision of the Family Court

On June 25, 1997, the Family Court issued its final order and opinion, holding that David remained "dependent" under 10 *Del.C.* § 901(8). The court determined that David's "physical, mental or emotional health and well-being would be threatened or impaired if he was returned to the custody of his father," who needed to learn appropriate parenting techniques.[5] On the issue of sexual abuse, the court found "the [Butlers'] testimony as to [David's] cursing, temper tantrums, statements of sexual abuse, and excessive masturbation to be credible."[6] The court concluded that it would not be in David's best interests to place him in a different foster home when the Butlers were capable of caring for him.[7]

Accordingly, the court granted guardianship to the Butlers, with Mother and Father having visitation rights. The court also ordered Father to undergo counseling on mental health, domestic violence, and parenting issues. From this decision, Father and DFS appeal.[8]

---

**5.** *In Re: The Matter of [David Lawrence Harrison], A Minor Child,* (June 25, 1997), Order at 25, 30–31.

**6.** *Id.* at 28.

**7.** *See id.* at 38.

**8.** *See id.* at 40. Father filed pro se a notice of appeal on July 21, 1997. On August 18, 1997, DFS filed a cross-appeal. This Court dis-

### Foster Parents' Standing to Petition for Guardianship

Initially, we observe that the course of this litigation has resulted in a most unfortunate delay in the disposition of David's best interests. This matter has been in litigation since January 25, 1994 to date. It has involved multiple hearings in the Family Court and numerous administrative and judicial determinations. In the course of that litigious history, David has matured from age four months to nearly six years.

 The standard and scope of this Court's review of a Family Court determination "extends to a review of the facts and law as well as to a review of the inferences and deductions made by the Trial Judge ." [9] This Court "will not disturb findings of fact unless they clearly are wrong, and [ ] will affirm the inferences and deductions of the trial court if they are supported by the record and are the product of an orderly and logical deductive process." [10]

. DFS argues that the trial court erred as a matter of law in granting the Butlers guardianship on the ground that foster parents do not have standing to seek or contest custody awards for foster children without the consent of DFS. According to DFS, although David was under the Butlers' care, DFS maintained legal custody over him and was responsible for his best interests.

We hold that foster parents have standing to petition for guardianship of foster children under their care. Accordingly, we affirm the decision of the Family Court. The issue of standing for petitions for guardianship is a matter of first impression in Delaware, and the applicable statutes offer little guidance. [11] We also understand that the decisions of the Family Court are split on the issue, as another Judge of the court recently determined that foster parents do not have standing to petition for guardianship. [12] Thus, we now take occasion to clarify the law in Delaware.

 In the case at bar, the Family Court correctly determined that the Butlers had standing to pursue guardianship over David. "The concept of 'standing,' in its procedural sense, refers to the right of a party to invoke the jurisdiction of a court to enforce a claim or redress a grievance. It is concerned only with the question of who is entitled to mount a legal challenge and not with the merits of the subject matter of the controversy." [13] To achieve standing, therefore, the Butlers' interest in the controversy must be distinguished

missed Father's appeal on November 4, 1998 for failure to file a timely opening brief. DFS remains in the litigation as cross-appellant. The Butlers and the CASA remain as cross-appellees. Mother failed to respond to DFS' Opening Brief, although she remains a party to the litigation.

9. *Wife (J.F.V.) v. Husband (O.W.V., Jr.)*, Del. Supr., 402 A.2d 1202, 1204 (1979).

10. *See Schoenbeck v. Schoenbeck*, Del.Supr., No. 358, 1997, 1998 WL 10759 (Jan. 2, 1998), Order at ¶ 7 (citing *Solis v. Tea*, Del.Supr., 468 A.2d 1276, 1279 (1983)).

11. Although two Delaware Supreme Court cases have addressed the issue of standing of foster parents in child *custody* cases, no decision of this Court has addressed the issue of standing of foster parents to petition for *guardianship*, the issue at bar. *See In Re*

*C.M.D., A Minor Child*, Del.Supr., 256 A.2d 266 (1969); *In Re One Minor Child*, Del. Supr., 254 A.2d 443 (1969). Appointment of a guardian supersedes that authority of a custodian. Custody involves immediate care and control of the child while guardianship indicates not only these responsibilities, but those of a parent, *in loco parentis*, as well. *See Martin v. Sand*, Del.Fam., 444 A.2d 309, 315 (1982).

12. *See [Franks v. Tarkins]*, Del.Fam., C.A. No. CN97–11870 (Apr. 9, 1999) (Opinion). In *Franks*, the Family Court used the real names of the parties. In this Opinion, however, pseudonyms have been used to protect the real parties' identities, even though they are not participants in the instant appeal.

13. *Stuart Kingston, Inc. v. Robinson*, Del. Supr., 596 A.2d 1378, 1382 (1991) (citing 59 Am.Jur.2d Parties § 30 (1989)).

from the interest shared by the other parties of a class or the public in general.[14]

Having cared for David for most of his life, the Butlers enjoy a legally protected interest, distinguishable from others having an interest, in petitioning for guardianship over David. In two cases, this Court has recognized that foster parents have standing to maintain *custody* actions against natural parents and DFS. We hold that this sound policy applies in guardianship cases as well.

In *In re One Minor Child*, we recognized the standing of foster parents to petition for custody of a child who had been under their care for over seven years.[15] In that case, the Superior Court, in reversing the decision of the Family Court, placed the child in the custody of his natural parents. On appeal, this Court reversed, holding that it was not in the child's best interests to remove him from the only home he had known and from the custody of those who loved and cared for him. Accordingly, we ordered that custody be awarded to the foster parents. Although we did not address squarely the issue of standing in *In re One Minor Child*, this Court later made it clear that foster parents had standing to petition for custody of a foster child over the objections of the State and the natural parents, so long as it was in the child's best interests.[16]

In *In re C.M.D., A Minor Child*,[17] we also held that the Family Court, and not the State, had the authority to hear child custody petitions despite statutory language that implied the State had exclusive decisionmaking rights regarding the care and placement of children in its care.[18]

In the case at bar, the Family Court determined that it was in David's best interests to be placed under the guardianship of the Butlers. Consistent with our previous decisions, the Family Court properly recognized that the Butlers had standing to petition for guardianship. This case does not present a situation in which the foster parents seek to intervene in a case where their interests already are represented adequately. Rather, the Butlers' interests are adverse to both DFS and Father, and therefore should be represented. Furthermore, where the child was placed in her father's custody months before the lawsuit, David never has been returned to the custody of his Father. This gave the Butlers an expectation of permanency. Thus, the Butlers have a distinguishable and legally protected interest that entitles them to pursue their guardianship petition.[19]

Finally, we note that the Family Court's decision to grant guardianship to the Butlers is not a permanent resolution of this situation. The Butlers now stand as David's legal guardians, not as his adoptive parents. The court ordered Father to undergo counseling at Delaware Guidance for parenting and mental health therapy. He must also complete a domestic violence/anger control course. The court granted visitation rights to both Mother and Father. Presumably, if Father or Mother can prove at a later time that David no longer is dependent/neglected, they may petition to re-establish their parental rights. In the meantime, we agree with the Family Court that it is in David's best interests to remain under the care of the Butlers. Therefore, we hold that the Family Court did not err as a matter of

---

14. *See id.*

15. Del.Supr., 254 A.2d 443, 446 (1969).

16. *See id.*

17. Del.Supr., 256 A.2d 266, 268 (1969) (citing *In Re One Minor Child*, 254 A.2d 443).

18. *See id.*

19. *See Stuart Kingston, Inc.*, 596 A.2d at 1382. Accordingly, on the standing point and solely as a matter of law, we decline to follow the holding of the Delaware Family Court in *Franks v. Tarkins, supra*, n. 12, and the Pennsylvania Superior Court case of *In the Interest of G.C.*, 449 Pa.Super. 258, 673 A.2d 932, 934 (1996) (holding foster parents do not have standing to seek or contest awards of custody concerning their foster children).

law in granting the Butlers standing to petition for guardianship.

### Burden of Proof

DFS argues that the Family Court erred by placing the burden of disproving David's dependency on Father and DFS. According to DFS, the Butlers, not Father and DFS, had the burden of proving the allegations in their complaint. DFS contends it was error to force Father to undergo extensive testing and to require that he prove his ability to take adequate care of David.

The Family Court did not err in placing the burden on DFS to prove that David was no longer dependent. To determine whether David was dependent, the Family Court looked to 10 *Del.C.* § 901(8), which provides:

> "Dependent child" means a child whose physical, mental or emotional health and well-being is threatened or impaired because of inadequate care and protection by the child's custodian, who is unable to provide adequate care for the child, whether or not caused by the child's behavior.... [20]

The court also outlined the three prerequisites for a continuing finding of dependency: "(1) whether the physical, mental or emotional health and well-being of the child is threatened or impaired, and if so, (2) whether that threat or impairment is caused by inadequate care and protection by the child's custodian, and if so, (3) whether the child's custodian is unable to provide adequate care for the child." [21] The court recognized that in making this determination, it must view the child's circumstances in their totality from the standpoint of the child. [22]

██ The court properly placed the initial burden of proof on DFS and Father. This matter was before the court because, initially, DFS had indicated its intent to reunify David with Father. In response, the Butlers filed their petition with the Family Court. In effect, the Butlers asked the court to review what DFS was intending to do and to determine whether it was in David's best interests to have the Butlers as guardians. Put another way, it was DFS' initial expression of its intent to reunify that shifted the burden of proof to DFS and Father.

Once the court determined that DFS had failed to support its position that reunification was appropriate, the Butlers bore the burden of proving that the grant of guardianship to them was in David's best interests. [23] They were successful in doing so. After carefully considering the positions of all the parties and hearing from the experts and the individuals seeking control over David, the Family Court determined that it would be in David's best interests to grant guardianship to the Butlers.

Two burdens of proof were at issue. First, DFS had to prove that David was no longer dependent, and therefore, reunification with Father was appropriate. [24] DFS failed to meet this burden. Second, the Butlers bore the burden of proof that it was in David's best interests to grant them guardianship. [25] Notwithstanding the rebuttable presumption that natural parents

**20.** 10 *Del.C.* § 901(8). The Family Court also cited to 10 *Del.C.* § 901(1), which provides, " '[a]dequate care' means a type and degree of personalized attention that will tend to advance a child's physical, mental, moral, emotional, and general well-being." 10 *Del.C.* § 901(1).

**21.** *See In Re: The Matter of [David Lawrence Harrison], A Minor Child* (June 25, 1997), Order at 25 (citing *Sand v. Martin*, Del.Super., C.A. No. 84A–AP–21, 1985 WL 189002 (May 28, 1985), Order at *1).

**22.** *See id; Martin v. Sand*, Del.Fam., 444 A.2d 309, 315 (1982) (citing factors from *Turner v.*

*Pannick*, Alaska Supr., 540 P.2d 1051, 1053 (1975)).

**23.** *See Martin*, 444 A.2d at 314–15.

**24.** *See id.* at 315; *Heather P. v. Short*, Del. Fam., C.A. No. CN948301, 96–01859; 1996 WL 434495 (Apr. 4, 1996), Order at *3; 13 *Del.C.* § 721(e) (stating that in order for non-parent to win custody, child first must be declared dependent/neglected and it must be in child's best interests).

**25.** *See Martin*, 444 A.2d at 315; *Heather P.*, 1996 WL 434495 at *3.

should be appointed guardians of their child,[26] the Family Court determined that the Butlers would best serve David's interests. We are satisfied that the Family Court did not err in placing the initial burden of proof on DFS. As we find no error of law, we decline to upset the Family Court's well-reasoned conclusion.

### De Facto Adoption

DFS contends the Family Court improperly created a "de facto" adoption by imposing on Father a higher standard than the rules required for the return of child custody. According to DFS, the court erroneously imposed on Father a high burden, the "clear and convincing" standard, when it should have employed the lesser "preponderance of the evidence" test. DFS alleges that the "clear and convincing" test was not proper because it is used only for termination of parental rights proceedings. We are not persuaded by this contention.

The Family Court's order stated:

The Court will expect clear, strong, and convincing evidence of a change in circumstances before again considering [David's] custody and placement. Mother and/or Father would be expected, at a minimum, to show that they have completed all of the requirements previously set for them and outlined in prior Court orders. Father would also be expected to show his involvement in counseling to address parenting, mental health, and domestic violence issues. Father would further be expected to show his active

participation in an outside support group for substance abuse issues.[27]

Family Court Civil Procedure Rule 203(b) provides: "[s]hould the Court find, by a *preponderance of the evidence* presented, that a child is dependent, neglected or abused, an order in accordance with 10 *Del.C.* Section 1009(b) shall be entered along with the dispositional provisos that may be set forth by the judge."[28] Father argues that the Family Court should have ordered that, in the future, Father must prove his ability to care for David by a preponderance of the evidence, not by clear and convincing proof.

Since the June 25, 1997 Order, the Family Court has not entered judgment on any petition by Father for the return of custody of David. Thus, the Family Court has not had occasion to rule on whether Father has proved that a change in circumstances exists that would warrant an alteration of David's dependency status. Accordingly, this claim is not ripe for appellate review.[29] If Father believes the Family Court employs an incorrect standard of review at a future dependency determination, he will have an opportunity to appeal that ruling. Accordingly, we decline now to rule on whether the Family Court imposed the correct standard of review for future dependency hearings.

### The Determination That David Was Dependent

█ Finally, DFS contends that the Family Court erred because its finding of dependency was not supported by the evi-

---

26. *Michael K.S. v. Arlene T.V.*, Del.Fam., C.A. No. CN93–08363, 1995 WL 783002 (Apr. 4, 1995), Order at *9; *In Re Two Minor Children*, Del.Ch., 283 A.2d 859, 861 (1971).

27. *In Re: The Matter of [David Lawrence Harrison]*, (June 25, 1997), Order at 40.

28. Family Court Civil Rule 203(b) (emphasis added). 10 *Del.C.* § 1009(b) sets forth the Family Court's options after it determines a child is dependent. *See also Alma G. v. Division of Child Protective Services*, Del.Super., C.A. No. 86A–DE–02, 1987 WL 11463 (May 21, 1987), Order at *1 ("[T]he preponderance of the evidence standard utilized by Family

Court in dependency/neglect petitions for custody applies whether parents, relatives, or the State is the petitioner.").

29. The test for whether an order is final and therefore ripe for appeal is whether the trial court has declared clearly its intention that the order be the court's "final act" in the case. *See Pollard v. The Placers, Inc.*, Del. Supr., 692 A.2d 879, 880 (1997); *see also* Supr.Ct.R. 8; *Jenkins v. State*, Del.Supr., 305 A.2d 610, 613 (1973) ("It is elementary that this Court will decline generally to review contentions not raised below and not fairly presented to the court below for decision.").

dence, nor was the product of an ordinary, logical, and deductive process. DFS argues that numerous expert and lay witnesses supported Father's ability to care for David, but the Family Court erroneously disregarded this evidence. DFS also claims that the court improperly attributed David's abnormal behavior to the allegations that Father sexually abused him when the evidence did not support this assumption.

The Family Court did not err in determining that David was dependent. DFS disagrees with the manner in which the trial court weighed the evidence and exercised its discretion—the very function of the trial court.[30] In its 41–page opinion, the court carefully outlined the evidence presented and set forth its reasons for granting guardianship to the Butlers. Over three days of hearings, in addition to the previous proceedings, the court had the opportunity to examine the voluminous evidence and to hear the testimony of live witnesses. Thereafter, the court concluded that DFS had failed to show that David was no longer dependent.

We refuse to upset the judgment of the Family Court. The decision that David was dependent is supported by the evidence. We refuse to disturb the Family Court's findings of fact and conclusions of law that we believe are the product of an orderly and logical deductive process.[31]

### Conclusion

The Family Court properly recognized the Butlers' standing to petition for guardianship over David. The court did not err in placing the initial burden of proof on Father and DFS to prove that David was no longer dependent. The issue of whether the Family Court applied the correct standard of proof for future change of circumstances hearings is not ripe for adjudication at this time. Finally, we hold that the court did not err in determining that David was dependent. Therefore, the judgment of the Family Court is affirmed.

**30.** *See Stegemeier v. Magness*, Del.Supr., 728 A.2d 557, 561 (1999) (holding review of trial court's decisions based on live testimony of witnesses, determinations of credibility, and expert witness presentations are afforded substantial deference); *In the Interest of Kelly Stevens*, 652 A.2d at 23 ("On appeal from the grant or denial of a termination petition, this Court will conduct a limited review of the factual findings of the trial court to assure that they are sufficiently supported by the record and result from an orderly and logical deductive process.").

**31.** *See In the Interest of Kelly Stevens*, 652 A.2d at 23.