IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| RALPH BROWN,[1] | § | |
| | § | No. 689, 2015 |
| Petitioner/Respondent Below, | § | |
| Appellant, | § | Court Below—Family Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | File No. CS-09-01929 |
| JESSIE BRANCH, | § | Petition Nos. 14-26105, |
| | § | 14-26747, 14-32801 |
| Respondent/Petitioner Below, | § | |
| Appellee. | § | |

Submitted: August 19, 2016
Decided: October 21, 2016

Before **HOLLAND**, **VALIHURA**, and **VAUGHN**, Justices.

**O R D E R**

This 21st day of October 2016, upon consideration of the parties' briefs and the record below, it appears to the Court that:

(1) The appellant, Ralph Brown ("the Father"), filed this appeal from the Family Court's November 20, 2015 order denying the Father's petition for modification of custody, denying the Father's petition for a rule to show cause, and granting the Mother's petition for a modification of custody. We find no error or abuse of discretion in the Family Court's decision. Accordingly, we affirm the Family Court's judgment.

---

[1] The Court previously assigned pseudonyms to the parties under Supreme Court Rule 7(d).

(2) The Mother and the Father are the parents of a son born in December 2000 ("the Son") and a daughter born in May 2005 ("the Daughter," and with the Son, "the Children"). On July 26, 2010, the Family Court issued an order, after a hearing, awarding the Mother sole custody and primary placement of the Children. The Family Court granted the Father weekly visitation with the Children at a visitation center.

(3) On January 27, 2014, the Family Court held a hearing on the Father's petition to modify custody. In an order dated April 25, 2014, the Family Court held that Father had not overcome the rebuttable presumption that a perpetrator of domestic violence should not be awarded sole or joint custody or primary residence under 13 *Del. C.* § 705A, awarded the Mother sole custody and placement of the Children, and awarded the Father weekly visitation with the Children at a visitation center. The Father filed a notice of appeal, which was dismissed as untimely.[2]

(4) On May 30, 2014, the Father filed a petition for the Mother to show cause why she was not in contempt of the April 25, 2014 order granting him visitation. On September 22, 2014, the Father filed a petition to modify custody and an affidavit for an emergency *ex parte* order. The Father requested emergency

---

[2] *Bivens v. Barkley*, 2014 WL 3658818 (Del. July 22, 2014).

custody of the Children. After a hearing, the Family Court denied the Father's request for emergency *ex parte* relief.

(5) On September 23, 2014, the Mother filed a petition to modify visitation. The Mother sought to end the Father's visitation with the Children. On October 27, 2014, the Family Court denied the Father's May 30, 2014 petition for a rule to show cause.

(6) On November 10, 2014, the Father filed another petition for the Mother to show cause why she was not in contempt of the April 25, 2014 order granting him visitation. On March 18, 2015, the Family Court appointed an attorney from the Office of the Child Advocate to act as the Children's guardian *ad litem*. The Family Court held a hearing on the Father's petition to modify custody and petition for a rule to show cause and the Mother's petition to modify custody on November 20, 2015.

(7) During the November 20, 2015 hearing, the Family Court heard testimony from both parents, a counselor from the Son's school, a therapist who treated the Daughter, a therapist who treated the Son, the Mother's former landlord, the Father's girlfriend, a friend of the Father, the Children's maternal aunt, and the Children's maternal grandmother. The Family Court also interviewed the Children, who both indicated that they did not want to visit the Father because they were scared of him. The attorney guardian *ad litem* argued

3

that the Father had not satisfied the burden for modification of the custody order under 13 *Del. C.* § 729, forced visitation with the Father was not in the best interests of the Children, and that if the Mother had complied with the April 25, 2014 visitation order, she would have put the Children at significant risk of emotional or psychological impairment.

(8)     At the conclusion of the hearing, the Family Court denied the Father's petition for modification of custody, granted the Mother's petition to stay the Children's visitation with the Father, and denied the Father's petition for a rule to show cause.   These rulings were incorporated in a written order dated November 20, 2015.  This appeal followed.

(9)     This Court's review of a Family Court decision includes a review of both the law and the facts.[3]  Conclusions of law are review*ed de novo*.[4]  Factual findings will not be disturbed on appeal unless they are clearly erroneous.[5]  We will not substitute our opinion for the inferences and deductions of the trial judge if those inferences are supported by the record.[6]  "The judgment of the Family Court must be affirmed when the inferences and deductions upon which it is based are

---

[3] *Mundy v. Devon,* 906 A.2d 750, 752 (Del. 2006).
[4] *Id.*
[5] *Id.*
[6] *Wife (J.F.V.) v. Husband (O.W.V., Jr.)*, 402 A.2d 1202, 1204 (Del. 1979).

supported by the record and are the product of an orderly and logical deductive process."[7]

(10)  When the Family Court enters an order after a full hearing on the merits concerning the legal custody of a child or his or her primary residence, it shall not modify that order for two years "unless it finds, after a hearing, that continuing enforcement of the prior order may endanger the child's physical health or significantly impair his or her emotional development."[8]  "An order concerning visitation may be modified at any time if the best interests of the child would be served thereby in accordance with the standards set forth in § 728(a)."[9]  Section 728(a) provides:

> [t]he Court shall determine, whether the parents have joint legal custody of the child or 1 of them has sole legal custody of the child, with which parent the child shall primarily reside and a schedule of visitation with the other parent, consistent with the child's best interests and maturity, which is designed to permit and encourage the child to have frequent and meaningful contact with both parents unless the Court finds, after a hearing, that contact of the child with 1 parent would endanger the child's physical health or significantly impair his or her emotional development.[10]

The criteria for determining the best interests of a child are set forth in 13 *Del. C.* § 722.[11]

---

[7] *Mundy*, 906 A.2d at 752-53 (citing *Solis v. Tea*, 468 A.2d 1276, 1279 (Del.1983)).
[8] 13 *Del. C.* § 729(c)(1).
[9] 13 *Del. C.* § 729(a).
[10] 13 *Del. C.* § 728(a).
[11] The best interest factors include: (i) the wishes of the parents regarding the child's custody and residential arrangements; (ii) the wishes of the child regarding her custodians and residential

(11) On appeal, the Father first argues that the attorney guardian *ad litem* did not speak to him before the November 20, 2015 hearing and did not use a medical release form the Father signed to obtain medical information about the Father. This argument is without merit. When the Father complained at the November 20, 2015 hearing that the attorney guardian *ad litem* did not meet with him before the hearing, the guardian *ad litem* informed the Family Court that she had spoken with the Father several times on the telephone, which the Father did not dispute. As to the Father's medical information, it was the burden of the Father, not the attorney guardian *ad litem*, to support his petition to modify custody and to overcome the rebuttable presumption that, as a perpetrator of domestic violence, he should not be awarded sole or joint custody or primary residence of the Children under 13 *Del. C.* § 705A.[12] If the Father wished to offer certain medical information at the November 20, 2015 hearing, then he should have obtained that information himself.

---

arrangements; (iii) the interaction and interrelationship of the child with her parents, grandparents, siblings, persons cohabitating in the relationship of husband and wife with a parent of the child, and any other residents of the household or persons who may significantly affect the child's best interests; (iv) the child's adjustment to her home, school, and community; (v) the mental and physical health of all individuals involved; (vi) past and present compliance by both parents with their rights and responsibilities to the child under 13 *Del. C.* § 701; (vii) evidence of domestic violence; and (viii) the criminal history of any party or any resident of the household. 13 *Del. C.* § 722.

[12] 13 *Del. C.* § 729(c)(1); *Green v. Green*, 2011 WL 1467757, at *1 (Del. Apr. 18, 2011) (recognizing that parent who filed petition to modify custody within two years of previous order carried burden).

(12) The Father next argues that the Family Court erred in refusing to accept medical information he brought to the November 20, 2015 hearing. It appears this information consisted of a Survivors of Abuse in Recovery, Inc. letter reflecting that the Father was in counseling to learn how to be a parent of sexually abused children. It is unclear if this document was introduced into evidence, but the Family Court did acknowledge that the Father was undergoing counseling on how to be a parent of sexually abused children.

(13) As the Family Court noted, however, the Father had to overcome the rebuttable presumption that he could not have sole or joint custody or primary residence of the Children as a perpetrator of domestic violence.[13] To rebut that presumption, the Father had to, among other things, successfully complete "a program of evaluation and counseling designed specifically for perpetrators of family violence and conducted by a public or private agency or a certified mental health professional."[14] The Father claimed that he had completed such a program, but did not offer any documentation to support this claim. In the absence of any documentation, the Family Court did not err in concluding that the Father had failed to rebut the presumption that he should not have sole or joint custody or primary residence of the Children as a perpetrator of domestic violence.

---

[13] 13 *Del. C.* § 705A.
[14] 13 *Del. C.* § 705A(c)(1).

(14) The Father next claims that he had DMV paperwork to refute the Mother's allegations that he regularly drove by her house. To the extent the Father claims the Family Court erroneously excluded this evidence, there is no indication in the record that the DMV paperwork was ever offered to the Family Court. During the hearing, the Father stated that he did not have the paperwork with him, but could possibly obtain it during a recess. There is no sign that he did so. In any event, the Family Court informed the Father that it would give little weight to the allegations that the Father was driving by the Mother's house.

(15) The Father next argues that the therapists who treated the Children did not have enough time with them to give a professional diagnosis. The Daughter's therapist (who was also the Mother's therapist) testified that she met with the Daughter three times, the Daughter expressed fear of the Father and love for the Mother and her boyfriend, the Daughter suffered anxiety, but was very well-adjusted, and there would be more trauma for the Daughter if she had to return to the Father's home or visit with him. The Son's therapist testified that he had met with the Son six times, the Son suffered from attention-deficit/hyperactivity disorder ("ADHD") and post-traumatic stress disorder ("PTSD") as a result of abuse he suffered and domestic violence he witnessed while living with the Father and the Mother, and that it would be psychologically and emotionally unsafe for the Son if he were forced to visit with the Father. "A trial court may determine the

8

weight and credibility to be accorded the testimony of any witness, including an expert."[15] Having carefully reviewed the record, we conclude that Family Court did not err in its consideration of the therapists' testimony.

(16) The Father next makes claims relating to a relative of the Mother's boyfriend attempting to molest the Daughter in 2012 and a relative of the Mother sexually abusing the Son. As the Family Court noted during the hearing, these claims were raised in the 2014 proceedings and addressed in the Family Court's April 25, 2014 order. The Family Court did not err in refusing to let the Father re-litigate the 2014 proceedings in the 2015 proceedings.

(17) The Father next argues that the Family Court erred in refusing to accept a visitation center log that reflected there were no issues during his visits with the Children at the visitation center. The Family Court sustained the attorney guardian *ad litem*'s objection to the log on the grounds that the log contained statements of witnesses who were not present for cross-examination.[16] Neither the creator of the log nor anyone from the visitation center attended the November 20, 2015 hearing. The Family Court did not err in excluding the visitation log.

(18) Finally, the Father appears to claim that the Family Court ignored the high school counselor's failure to explain the Son's poor grades or school

---

[15] *Jones v. Lang*, 591 A.2d 185, 188 (Del. 1991).
[16] Delaware Rules of Evidence 801(c) (defining hearsay as "a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted"); Delaware Rules of Evidence 802 (providing hearsay is not admissible unless otherwise provided by law or the Delaware Rules of Evidence).

9

attendance and a police report reflecting that the Mother endangered the welfare of the Children by driving erratically in an uninsured and unregistered car. In its ruling, the Family Court recognized that the Son was struggling in school, had an individualized education program, and had missed multiple days of school. The Family Court also recognized that the Mother suffers from anxiety.

(19) The weighing of the evidence was within the discretion of the Family Court.[17] The record contains sufficient evidence, including the Family Court's interviews with the Children and the testimony of their therapists, to support the Family Court's determination that continuation of the April 25, 2014 custody order would not endanger the Children's physical health or significantly impair their emotional development, that visitation with the Father was not in the best interest of the Children and would significantly impair the Children's emotional development, and that the Mother was not in contempt of the April 25, 2014 order. After a careful review of the parties' briefs and the record, we conclude that the Family Court's decision should be affirmed. We find no error of law or abuse of discretion and we conclude that the Family Court's findings, deductions, and conclusions were the product of an orderly and logical deductive process.

---

[17] *Div. of Family Servs.*, 741 A.2d 1016, 1024 (Del. 1999); *Rosemary E.R. v. Michael G.Q.*, 471 A.2d 995, 997 (Del. 1984).

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family

Court is AFFIRMED.

BY THE COURT:

*/s/ Karen L. Valihura*
Justice