IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| RONALD SAMPSON,[1] | § | |
| | § | No. 175, 2017 |
| Respondent Below, | § | |
| Appellant, | § | Court Below—Family Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | File No. CN16-03366 |
| DEPARTMENT OF SERVICES FOR | § | Petition No. 16-15091 |
| CHILDREN YOUTH AND THEIR | § | |
| FAMILIES (DSCYF), | § | |
| | § | |
| Petitioner Below, | § | |
| Appellee. | § | |

Submitted: August 25, 2017
Decided: October 25, 2017

Before **STRINE**, Chief Justice; **SEITZ** and **TRAYNOR**, Justices.

## O R D E R

This 25th day of October 2017, upon consideration of the parties' briefs and the record below, it appears to the Court that:

(1)     The appellant, Ronald Sampson ("the Father"), filed this appeal from a March 21, 2017 Family Court order accepting the Commissioner's order granting the Department of Services for Children Youth and Their Families' ("DSCYF") petition for substantiation of the Father for abuse on the Child Protection Registry at

---

[1] The Court previously assigned pseudonyms to the parties under Supreme Court Rule 7(d).

Child Protection Level IV.[2] We find no error or abuse of discretion in the Family Court's decision. Accordingly, we affirm the Family Court's judgment.

(2) On May 23, 2016, DSCYF filed a petition for substantiation against the Father based on his alleged sexual abuse of his then seven-year old daughter who has Down Syndrome ("the Daughter"). DSCYF attached a Notice of Intent to Substantiate for Abuse or Neglect and Enter on Child Protection Registry, an Amended Notice, and the Father's request for a hearing in the Family Court. The substantiation hearing was scheduled for November 22, 2016.

(3) On November 15, 2016, the Father filed a motion for appointment of counsel. At the beginning of the November 22, 2016 substantiation hearing, the Family Court Commissioner denied the Father's motion for appointment of counsel. The Commissioner then heard testimony from the Daughter's school nurse, the Daughter's teacher, a Children's Choice social worker, a Division of Family Services supervisor, and the mother of the Daughter ("the Mother"). Before the hearing, the Commissioner reviewed Child Advocacy Center ("CAC") interviews with the Daughter and her brother.

(4) In an order dated November 29, 2016, the Commissioner found by a preponderance of the evidence that the Father had sexually abused the Daughter in

---

[2] *Dep't of Servs. for Children, Youth and Their Families (DSCYF/DFS) v. R.S.,* 2017 WL 2418276 (Del. Fam. Ct. Mar. 21, 2017).

2

2015 and 2016 and placed him on Level IV of the Children Protection Registry. In an order dated December 2, 2016, the Commissioner clarified her denial of the Father's motion for appointment of counsel. On December 29, 2016, the Father sought review of the Commissioner's decision.

(5) In an order dated March 21, 2017, the Family Court found the Commissioner did not err in denying the Father's motion for appointment of counsel, substantiating the Father for sexual abuse, and placing the Father on Level IV of the Child Protection Registry. The Family Court accepted the Commissioner's November 29, 2016 order. This appeal followed.

(6) This Court's review of a Family Court decision includes a review of both the law and the facts.[3] Conclusions of law are reviewed *de novo*.[4] Factual findings will not be disturbed on appeal unless they are clearly erroneous.[5] When the determination of facts turns upon the credibility of witnesses who testified before the trier of fact, this Court will not substitute its opinion for that of the trier of fact.[6] On appeal, the Father's arguments may be summarized as follows: (i) the Family Court erred in denying his motion for appointment of counsel; and (ii) there was insufficient evidence to support his substantiation for sexual abuse of the Daughter.

---

[3] *Mundy v. Devon*, 906 A.2d 750, 752 (Del. 2006).
[4] *Id.*
[5] *Id.*
[6] *Wife (J.F.V.) v. Husband (O.W.V., Jr.)*, 402 A.2d 1202, 1204 (Del. 1979).

(7) The Father argues the Family Court's denial of his motion for appointment of counsel deprived him of procedural due process. "The right to have counsel appointed at State expense in any proceeding is determined by the due process requirements in the United States Constitution and the Delaware Constitution."[7] Under the United States Constitution, due process "is not a fixed concept but implicitly means 'fundamental fairness' in the context of specific circumstances."[8] The Delaware Constitution "explicitly guarantee[s] fundamental fairness in the administration of justice for the citizens of Delaware, with regard to the specific context, in all causes of action."[9]

(8) In deciding what due process requires, both the United States Supreme Court and this Court evaluate the factors set forth in *Mathews v. Eldridge*.[10] These factors are: (i) the private interests at stake; (ii) the government's interest; and (iii) the risk the procedures used will result in erroneous decisions.[11] In the context of termination-of-parental-right proceedings, the United States Supreme Court has held the Due Process Clause does not require the appointment of counsel for indigent parents in every proceeding.[12] Delaware courts follow a case-by-case approach to

---

[7] *Watson v. Div. of Family Servs.*, 813 A.2d 1101, 1106 (Del. 2002) (citing U.S. Const. amend. XIV, § 1 and Del. Const. art. I, § 9).
[8] *Id.* (citing *Lassiter v. Dep't Soc. Servs.*, 452 U.S. 18, 31 (1981)).
[9] *Watson*, 813 A.2d 1101, 1108.
[10] *Eldridge*, 414 U.S. 319, 335 (1976); *Watson*, 813 A.2d at 1108.
[11] *Eldridge*, 414 U.S. at 335.
[12] *Lassiter*, 452 U.S. at 32-33.

the appointment of counsel in termination, as well as dependency/neglect proceedings, but routinely appoint counsel to represent indigent parents in such proceedings.[13]

(9) The Father argues that parents have a strong private interest in having custody of their children and that the risk of an erroneous deprivation of that right outweighs the government's interest in summary adjudication. As the Commissioner and Family Court recognized, however, this was a substantiation proceeding, not a dependency/neglect or termination-of-parental-rights proceeding. The potential consequences of a substantiation hearing—placement on the Child Protection Registry—are significantly different than the potential consequences of a termination of parental rights hearing. "The primary purpose of the Child Protection Registry is to protect children and to ensure the safety of children in child care, health care and public education facilities."[14] Placement on Level IV of the Child Protection Registry makes a person ineligible for employment with places like the Division of Services for Children, Youth and Their Families, public schools, daycares, and healthcare facilities.[15]

(10) According to the Father, his Level IV placement will not have any bearing on his employment or ability to find work, but could guarantee termination

---

[13] *Watson*, 813 A.2d at 1108.
[14] 16 *Del. C.* § 921.
[15] 16 *Del. C.* § 923(b)(4).

of his parental rights and preclude his visitation with the Daughter under 13 *Del. C.* § 726A. The Family Court acknowledged that DSCYF had filed a petition for termination of the Father's parental rights and that the Family Court had appointed counsel for the Father in those proceedings and the related dependency/neglect proceedings. The Family Court noted, however, that there is no right to appointment of counsel in many civil proceedings, including protection-from-abuse and child-custody hearings. The Family Court concluded that the substantiation and termination-of-parental-rights proceedings were not so closely related as to require the appointment of counsel for the Father in the substantiation proceedings. The Family Court stated that it might consider the Father's placement on the Child Protection Registry in the termination-of-parental-rights proceedings, but the Father would have counsel in those proceedings and the Family Court would "consider independently of the Commissioner the same evidence in determining whether Father sexually abused the Child and if so, whether that abuse should properly lead to the termination of parental rights."[16]

(11) Contrary to the Father's contentions, the substantiation finding did not guarantee termination of his parental rights. Termination of parental rights is subject to a higher burden of proof—clear and convincing evidence—than a substantiation

---

[16] *R.S.*, 2017 WL 2418276, at *4. The Family Court subsequently terminated the parental rights of both parents. That ruling is currently on appeal in No. 339, 2017.

6

proceeding—preponderance of the evidence.[17] As to visitation under § 726A, which the Father did not raise in the Family Court, Section 726A prohibits all visitation and contact between a parent and child if the parent is found to have sexually abused the child by a preponderance of the evidence until the Family Court "considers testimony from a certified mental health professional who is the therapist for the child, as to whether such a custodial, residential or visitation arrangement is in the child's best interests." The finding in the substantiation proceeding that the Father sexually abused the Daughter did not mean the Father was permanently deprived of contact with the Daughter.

(12) The procedures used by the Family Court in this case created little risk of an erroneous result. The Father received notice of DSCYF's intent to substantiate him for sexual abuse of the Daughter. Between the first notice of intent to substantiate in April 2016 and the substantiation hearing in November 2016, the Father had more than sufficient time to prepare. At the substantiation hearing, the Commissioner answered the Father's questions, explained how to cross-examine DSCYF's witnesses, and gave him information about presenting his own case,

---

[17] Compare Pace v. Dep't of Servs. for Children, Youth and Their Families, 963 A.2d 724, 731 (Del. 2008) (recognizing termination of parental rights requires clear and convincing evidence of at least one of the grounds for termination of parental rights under 13 Del. C. § 1103(a) and clear convincing evidence that termination of parental rights is in the best interest of the child) with 16 Del. C. § 925A(a) (providing person will be placed on the Child Protection Registry if the court finds by a preponderance of the evidence that the person committed an act of abuse or neglect that was based on the same incident as alleged in the notice of intent to substantiate and the person poses a risk of future harm to children).

including his option to testify. Balancing the Father's interest in the effect of the substantiation proceeding on his potential employment and relationship with the Daughter, the government's interest in the welfare of children under the Child Protection Registry, and the small risk of an erroneous result, we conclude the Family Court did not err in denying the Father's motion for appointment of counsel.

(13) The Father's remaining claims relate to the sufficiency of the evidence supporting the Commissioner's conclusion that he sexually abused the Daughter and should be placed on Level IV of the Child Protection Registry. To place a person on the Child Protection Registry, the Family Court must determine by a preponderance of the evidence, after a hearing on the merits or the agreement of the parties, that the person committed an act of abuse of neglect based on the same incident as alleged in the notice of the intent to substantiate and the person poses a risk of future harm to children.[18] The evidence presented by DSCYF included: (i) the testimony of the Daughter's teacher and school nurse that they had observed the Daughter engaging in sexually inappropriate behavior; (ii) the social worker's testimony that she observed the Father touching the Daughter inappropriately, including putting his hand down the back of her pants and kissing her frequently on the mouth; and (iii) the Daughter's statement in the CAC interview that the Father

---

[18] 13 *Del. C.* § 925A.

8

had licked her butt. In his defense, the Father: (i) elicited testimony that the Daughter was in foster care when she displayed inappropriate behavior; (ii) argued no criminal charges were filed, and he could not have sexually abused the Daughter during supervised visits; and (iii) elicited testimony from the Mother that she had never observed the Father touch the Daughter inappropriately.

(14) The Father contends the evidence was insufficient because most of it consisted of child hearsay. Under 13 *Del. C.* § 724(d)(2), a child's out-of-court statement may be admitted into evidence if reasonable notice of the intention to offer the statement is made to all of the parties, the statement is shown to possess particularized guarantees of trustworthiness, and the Family Court finds the child is unavailable due to the child's physical or mental disability. The Father had notice of DSCYF's intention to offer the Daughter's CAC interview into evidence and consented to admission of the interview. The Commissioner did not err in finding the CAC interviews trustworthy as a result of the forensic interview process and the Daughter unavailable due to her disability (Down Syndrome).

(15) The Father also argues he did not have the opportunity to call witnesses, but he did not raise this as an objection to the Commissioner's order. In any event, the record reflects the Father called the Mother as a witness and did not subpoena any witnesses. Finally, the Father contends that the Commissioner erred in relying upon character evidence that was inadmissible under Rule 404, but he fails to

9

identify the evidence he is referring to or where he raised that objection in the substantiation hearing. Having carefully reviewed the record and the parties' submissions on appeal, we conclude the Family Court did not err in finding there was sufficient evidence, including the Daughter's statement in the CAC interview and the testimony of the social worker, to support the Commissioner's findings.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED.

BY THE COURT:

/s/ Gary F. Traynor
Justice