George S. MUNDY, Petitioner
Below, Appellant,

v.

Mary J. DEVON, Respondent
Below, Appellee.

No. 174, 2005.

Supreme Court of Delaware.

Submitted: April 5, 2006.

Decided: April 6, 2006.

Gerald I.H. Street, Esquire (argued) and Mitchell W. May, Esquire, Street & Ellis, P.A., Dover, Delaware, for appellant.

Michael W. Arrington, Esquire, Parkowski, Guerke & Swayze, P.A., Wilmington, Delaware, for appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices, constituting the Court en Banc.

HOLLAND, Justice.

This is an appeal from a final judgment of the Family Court involving a Petition for Modification of Custody. George S. Mundy (the "Father") and Mary Devon (the "Mother") originally entered into a stipulation regarding the custody of their minor child, Casey Mundy ("Casey"), who was born on February 7, 1996.[1] The parents agreed to share joint custody, with primary placement alternating annually on a school year basis. The Father lives in Delaware and the Mother lives in Michigan.

The Father petitioned the Family Court to modify the consent agreement and to reassign the primary placement of Casey to him only.[2] The Family Court carefully considered the Father's petition in accor-

---

1. The Court has assigned pseudonyms to the parties and their minor child pursuant to Supreme Court Rule 7(d).

2. Del.Code Ann. tit. 13, § 729(b) (1999) ("[a]n order entered by the Court by consent of all parties, an interim order or a written agree-ment between the parties concerning the legal custody of a child or his or her residence may be modified at any time by the Court in accordance with the standards set forth in § 722 of this title.")

dance with Title 13, section 722, of the Delaware Code, which provides:

> (a) The Court shall determine the legal custody and residential arrangements for a child in accordance with the best interests of the child. In determining the best interests of the child, the Court shall consider all relevant factors including:
>
> > (1) The wishes of the child's parent or parents as to his or her custody and residential arrangements;
> >
> > (2) The wishes of the child as to his or her custodian(s) and residential arrangements;
> >
> > (3) The interaction and interrelationship of the child with his or her parents, grandparents, siblings, persons cohabiting in the relationship of husband and wife with a parent of the child, any other residents of the household or persons who may significantly affect the child's best interests;
> >
> > (4) The child's adjustment to his or her home, school and community;
> >
> > (5) The mental and physical health of all individuals involved;
> >
> > (6) Past and present compliance by both parents with their rights and responsibilities to their child under § 701 of this title;
> >
> > (7) Evidence of domestic violence as provided for in Chapter 7A of this title; and
> >
> > (8) The criminal history of any party or any other resident of the household including whether the criminal history contains pleas of guilty or no

contest or a conviction of a criminal offense.[3]

The Family Court concluded that it would be in the best interests of the child, Casey, to continue alternating primary placement annually on a school year basis, in accordance with the existing consent order.

The Father raises three arguments in this appeal. First, he claims that the Family Court erred because it did not consider and apply six non-statutory factors prior to ordering the continuation of what he characterizes as a "shared placement" arrangement. Second, the Father contends that the Family Court erred when it described some of the expert testimony presented by the psychologists as speculative. Finally, the Father argues that the Family Court should have considered a full spectrum of placement options and that the failure to do so was an error of law.

We have concluded that the Father's final argument is meritorious. Therefore, the judgment of the Family Court must be reversed. This matter will be remanded for further proceedings in accordance with this opinion.

### Standard of Review

 Appellate review of an appeal from a Family Court's custody decision extends to both the facts and the law as well as to a review of the inferences and deductions made by the trial judge.[4] To the extent the Family Court's decision implicates rulings of law, our review is *de novo*.[5] Findings of fact will not be disturbed, unless they are found to be clearly erroneous and justice requires they be overturned.[6] The judgment of the Family

---

**3.** Del.Code Ann. tit. 13, § 722(a) (1999 & Supp.2004).

**4.** *Wife (J.F.V.) v. Husband (O.W.V., Jr.),* 402 A.2d 1202, 1204 (Del.1979).

**5.** *In re Heller,* 669 A.2d 25, 29 (Del.1995).

**6.** *Solis v. Tea,* 468 A.2d 1276, 1279 (Del. 1983).

Court must be affirmed when the inferences and deductions upon which it is based are supported by the record and are the product of an orderly and logical deductive process.[7]

### Non–Statutory Factors Discretionary

■ The Father's first argument is that the Family Court failed to consider its own mandatory precedents, which require the consideration of six non-statutory factors in determining whether a shared placement arrangement is appropriate in a joint custody decree. Those factors are:

(1) that the parents communicate effectively; (2) that the children need not make adjustments from one parent's home to the other's because the parents have a "uniform pattern of child rearing;" (3) that the parents are flexible; (4) that it would be beneficial for the children; (5) that the children are biologically and physically capable of making such a change; and (6) that there is uniformity in the children's education and religious upbringing.[8]

Our review of the applicable statutes and the Family Court's jurisprudence reflects that those six non-statutory factors are neither mandatory nor dispositive. The six factors have been considered in joint custody cases by at least two Family Court judges when shared placement was at issue. In each of those cases, however, the six "factors" were simply mentioned in a cursory manner, following a comprehensive substantive evaluation of the mandatory statutory factors set forth in section 722.[9]

This Court recently addressed the Family Court's need to consider the non-statutory factors set forth in the Model Relocation Act in deciding a custody and visitation proceeding.[10] We held that a Family Court judge "has discretion to consider additional factors as long as it considers all of the statutory enumerated factors" mandated in section 722.[11] The *ratio decidendi* of *Potter* is equally applicable to the six non-statutory factors cited by the Father in this case, when shared placement is at issue in a custody proceeding.

■ The Father's first challenge to the Family Court's decision fails for two independent reasons. First, because the six non-statutory factors were never presented to the Family Court at trial, that issue is waived on appeal in the absence of plain error.[12] The record reflects no plain error because, in accordance with our holding in *Potter*, any consideration of those six non-statutory factors would have been discretionary.

### Alternating Primary Placement

■ Second, to the extent consideration of those six non-statutory factors is discretionary when shared placement is considered in making a joint custody award, the

7. *Id.*

8. *In re Isabel P.D. and Henry A.D.*, 1996 WL 862344, *6 (Del.Fam.Ct. Dec.20, 1996) (quoting *Daniel S.C. v. Susan F.C.*, Del.Fam., File No. CN92–9125, Horgan, J. at 5 (May 19, 1993)).

9. *See also*, *G.J.G. v. L.K.M.*, 2003 WL 22476209, *7 (Del.Fam.Ct. July 10, 2003); *V.S.K. v. D.M.K.*, 2003 WL 22269175, *5 (Del. Fam.Ct. June 20, 2003); *In re A.L. and M.S.L.*, 2002 WL 1940037, *6 (Del.Fam.Ct. Jan.31, 2002); *G.T. v. J.W.T.*, 2000 WL 1663701, *5 (Del.Fam.Ct. July 24, 2000); *Diane M.P. v. Ronald E.P.*, 2000 WL 1692944, *5 (Del.Fam. Ct. Jan 28, 2000).

10. *Potter v. Branson*, 877 A.2d 52, 2005 WL 1403823 (Del. June 13, 2005).

11. *Id.* *2.

12. Supr. Ct. R. 8.

non-statutory factors were not applicable to the facts of this case. Shared placement is generally an alternating weekly or monthly arrangement when the parents' homes are in close proximity. The stipulated arrangement in this case provided for joint custody with *primary* placement—not shared placement—alternating annually on a school-year basis, and where the parents' homes are located in different states.

■ Alternating primary placement must be distinguished from shared placement. Under primary placement arrangements, one parent is the primary residential custodian. In a shared placement arrangement, the child resides with each parent on an alternating weekly, monthly or similar basis.[13]

Most courts have concluded that it is generally not in a child's best interests to be transferred between his or her parents on a short-term basis.[14] Some courts have declined to divide primary placement based on a finding that such a division is not in the child's best interests.[15] Other courts have concluded that the child is entitled to the love, advice, and training of both parents;[16] and have awarded alternating or shared primary placement[17] when such placement was found to be in the child's best interests.[18]

Some custody decisions from other jurisdictions recognize a court's authority to make an award alternating the child's primary residence on an annual basis. These cases also reflect, however, that such arrangements are unique and constitute an exception to the general preference for one continuous primary placement even when custody is joint. Orders granting each parent primary placement in alternating years have been entered based on evidence that such placement would be in the child's best interests or that the potential harm of a stable single primary placement arrangement outweighs the problems inherent in an alternating arrangement.[19]

### Expert Witness Testimony

■ The Father's second argument is that the Family Court disregarded the weight of the evidence when it concluded the psychologists' testimony was speculative. On appeal, the Father has the burden of demonstrating that the Family Court's factual findings were clearly erro-

**13.** *In re Strizic,* 263 Mont. 193, 867 P.2d 386 (1994).

**14.** *See, e.g., Jarvis v. Jarvis,* 584 N.W.2d 84, 92 (N.D.1998).

**15.** *Lamelas v. Granados,* 730 So.2d 387 (Fla. Dist.Ct.App.2d Dist.1999); *In re of Deem,* 328 Ill.App.3d 453, 262 Ill.Dec. 741, 766 N.E.2d 661 (2002); *In re Muell,* 408 N.W.2d 774 (Iowa Ct.App.1987); *In re Pergament,* 28 Or. App. 459, 559 P.2d 942 (1977); *Albrecht v. Albrecht,* 974 S.W.2d 262 (Tex.App.1998).

**16.** *Vinson v. Vinson,* 263 Ala. 635, 83 So.2d 215 (1955); *McDonald v. McDonald,* 197 Or. 275, 253 P.2d 249 (1953); *Wheeler v. Wheeler,* 37 Wash.2d 159, 222 P.2d 400 (1950).

**17.** *Wing v. Wing,* 12 Ark.App. 84, 671 S.W.2d 204 (1984); *Watson v. Watson,* 135 Colo. 296, 310 P.2d 554 (1957); *Gerscovich v. Gersco-*

*vich,* 406 So.2d 1150 (Fla.Dist.Ct.App.1981); *Clark v. Madden,* 725 N.E.2d 100 (Ind.Ct.App. 2000); *Palmer v. Palmer,* 223 A.D.2d 944, 637 N.Y.S.2d 225 (N.Y.App.Div.1996); *Lapp v. Lapp,* 293 N.W.2d 121 (N.D.1980); *Hubbell v. Hubbell,* 176 Pa.Super. 186, 107 A.2d 388 (1954); *Grant v. Grant,* 39 Tenn.App. 539, 286 S.W.2d 349 (1954); *Reynolds v. Reynolds,* 45 Wash.2d 394, 275 P.2d 421 (1954).

**18.** *Sheldon v. Sheldon,* 423 A.2d 943 (Me. 1980); *In re Pobst,* 957 S.W.2d 769 (Mo.Ct. App.1997).

**19.** *In re Murphy,* 834 P.2d 1287 (Colo.Ct.App. 1992) (disapproved of on other grounds by *In re Wall,* 868 P.2d 387 (Colo.1994)); *In re Riggert,* 537 N.W.2d 789 (Iowa Ct.App.1995).

neous.[20] He has not sustained that burden.

It was the exclusive province of the trial judge, as the trier of fact, to assess the credibility of the witnesses and then to weigh all of the evidence presented. The Family Court acknowledged that the psychologists identified some negative aspects of the Mother's conduct. Nevertheless, the Family Court pointed out several positive factors that counterbalanced the psychologists' negative observations about the Mother. The record does not support the Father's assertion that the Family Court's factual assessment of the psychologists' expert testimony was clearly erroneous.

### Only Two Options Considered

Finally, the Father contends that the Family Court erred in failing to consider the full panoply of placement alternatives available. In this case, the Family Court was deciding a petition for a modification of custody filed by the Father that requested primary placement with him every school year. The record reflects that Casey preferred to have primary placement every school year with her Mother. Although the Mother desired to have primary placement, she did not file a petition for primary placement and testified that continuing to alternate primary placement annually would enable Casey to establish a stronger relationship with her Father.

Accordingly, the Family Court stated that it "was faced with the unenviable position of determining whether to continue the current [alternating] primary placement arrangement or to grant Father primary placement of the child." As between those two choices, the Family Court held that Casey's best interests would be served by continuing the joint custody arrangement with primary placement being alternated annually on a school-year basis. Therefore, the Father's petition to modify custody was denied.

### Agreement and Remand

The Father filed the petition for modification because he felt that alternating primary placement annually was not in Casey's best interests. Although the Father seeks primary placement with him every year in Delaware, his position on appeal is that the Family Court erred by not considering *all* placement options. His argument on appeal recognizes that, *inter alia*, primary placement with the Mother in Michigan is also an appropriate option for the Family Court to consider in evaluating Casey's best interests.

Since the Mother did not file a petition for primary placement, we directed the parties to file supplemental memoranda addressing the residential placement options that were available for consideration by the Family Court. In those supplemental memoranda, both parties agree that the Family Court should have considered all residential placement options and then decided which arrangement was in Casey's best interests.

The record reflects that the parties did not make it clear to the Family Court that they agreed *all* options for residential placement were before it for consideration. It also is unclear whether the Family Court *did* consider all options. Therefore, this matter will be remanded to the Family Court to: i) report whether it did consider all options; and ii) if it did not, to do so and report its conclusion as to what residential placement arrangement is in Casey's best interests.[21]

---

**20.** *See Boyer v. Poole,* 815 A.2d 348, 2003 WL 141267 (Del. Jan.17, 2003).

**21.** Del.Code Ann. tit. 13, § 722(a) (1999 & Supp.2004).

### Conclusion

This matter is remanded to the Family Court for further proceedings in accordance with this opinion. Jurisdiction is retained.[22] Within sixty days, the Family Court shall file a report in this Court setting forth its finding of facts and conclusions of law.