IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| LAURA WEST,[1] | § | |
| | § | No. 232, 2017 |
| Respondent Below, | § | |
| Appellant, | § | Court Below—Family Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | File No. CK15-01924 |
| MARK CARLISE, | § | Petition No. 15-37497 |
| | § | |
| Petitioner Below, | § | |
| Appellee. | § | |

Submitted: October 13, 2017
Decided:    December 7, 2017

Before **STRINE**, Chief Justice; **VALIHURA** and **VAUGHN**, Justices.

# **O R D E R**

This 7th day of December 2017, upon consideration of the parties' briefs and the record below, it appears to the Court that:

(1)    The appellant, Laura West ("the Mother"), filed this appeal from a Family Court order dated May 30, 2017.  The Family Court order granted the parties' joint custody of their minor daughter ("the Daughter") and granted the appellee, Mark Carlise ("the Father"), primary placement of the Daughter with the Mother having visitation rights.  We find no error or abuse of discretion in the Family Court's decision.  Accordingly, we affirm the Family Court's judgment.

---

[1] The Court previously assigned pseudonyms to the parties under Supreme Court Rule 7(d).

(2)     The Daughter was born in January 2015.  In December 2015, the Father filed a petition for an emergency *ex parte* order granting him custody of the Daughter.  The Father alleged that the Mother was unemployed, living in a substandard motel with State assistance, and could not provide shelter for the Daughter.  In an order dated December 10, 2015, a Family Court commissioner found no immediate, irreparable harm and denied the petition.

(3)     A mediation conference was held on July 26, 2016.  The Father appeared, but the Mother did not.  The Father was awarded interim visitation every other weekend.

(4)     In August 2016, the Father filed another petition for an emergency *ex parte* order granting him custody of the Daughter.  The Father alleged that the Mother was homeless.  The Father was granted temporary custody of the Daughter on August 15, 2016.  After a probable cause hearing on the Father's petition that included testimony from the Mother, the Father, and the maternal grandmother, a Family Court commissioner found the Mother was not homeless, she frequently left the Daughter with her mother while she worked with her father during the week in Philadelphia, the Mother would arrange for temporary housing for herself and the Daughter when she left her mother's house due to family conflicts, and the Father did not establish probable cause of a risk of immediate and irreparable harm to the

Daughter in the Mother's care. The Family Court commissioner denied the Father's petition and rescinded the *ex parte* order granting the Father custody of the Daughter.

(5) The Father's custody petition was referred for scheduling. On October 24, 2016, the parties were directed to appear for a call of the calendar on December 14, 2016. At the December 14, 2016 call of the calendar, the parties were informed of the time and date of the hearing on the Father's petition. The Mother also provided a new address. On March 10, 2017, the Family Court mailed the notice of the hearing to the parties. The Mother's notice was returned to the Family Court as "Return to Sender, Attempted—Not Known, Unable to Forward."

(6) The Father appeared for the May 30, 2017 hearing, but the Mother did not appear. The Father informed the Family Court that the Mother had called him shortly before the hearing to say she would not be there because she did not have transportation and courts were not her thing. The Family Court questioned the Father regarding: (i) his contact with the Daughter; (ii) his employment, residence, and other relatives; (iii) the health of the Daughter, the Father, and the Mother; (iv) the Mother's activities in Philadelphia; (v) his relationship with the maternal grandmother; (vi) the Mother's criminal record; and (vii) whether there was any domestic violence between the Mother and the Father.

(7) Based on the Father's testimony and the Mother's failure to appear, the Family Court concluded it was in Daughter's best interests for the parties to have

joint custody with the primary place of residence to be with the Father. The Mother was awarded visitation. This appeal followed.

(8)     This Court's review of a Family Court decision includes a review of both the law and the facts.[2] Conclusions of law are review*ed de novo*.[3] Factual findings will not be disturbed on appeal unless they are clearly erroneous.[4] We will not substitute our opinion for the inferences and deductions of the trial judge if those inferences are supported by the record.[5]

(9)     Under Delaware law, the Family Court must determine legal custody and residential arrangements for a child in accordance with the best interests of the child. The criteria for determining the best interests of a child are set forth in 13 *Del. C.* § 722.[6] On appeal, the Mother argues the Family Court erred because: (i) she has been the Daughter's primary caregiver since birth, not the maternal grandmother as found by the Family Court; (ii) the Father paid child support, but rarely visited or

[2] *Mundy v. Devon,* 906 A.2d 750, 752 (Del. 2006).
[3] *Id.*
[4] *Id.*
[5] *Wife (J.F.V.) v. Husband (O.W.V., Jr.)*, 402 A.2d 1202, 1204 (Del. 1979).
[6] The best interest factors include: (i) the wishes of the parents regarding the child's custody and residential arrangements; (ii) the wishes of the child regarding her custodians and residential arrangements; (iii) the interaction and interrelationship of the child with her parents, grandparents, siblings, persons cohabitating in the relationship of husband and wife with a parent of the child, and any other residents of the household or persons who may significantly affect the child's best interests; (iv) the child's adjustment to her home, school, and community; (v) the mental and physical health of all individuals involved; (vi) past and present compliance by both parents with their rights and responsibilities to the child under 13 *Del. C.* § 701; (vii) evidence of domestic violence; and (viii) the criminal history of any party or any resident of the household. 13 *Del. C.* § 722.

called the Daughter; (iii) she did not speak with the Father on May 30, 2017; and (iv) the Daughter cries when she leaves the Mother to stay with the Father. The Father disputes the Mother's contentions.

(10) After a careful review of the parties' briefs and the record, we find no error or abuse of discretion in the Family Court's ruling. The Mother never responded to the Father's custody petition and offers no explanation for her failure to appear at the May 30, 2017 hearing. Because none of the Mother's claims (one of which is based on events after the May 30, 2017 hearing) were before the Family Court in the first instance, we will not consider them for the first time on appeal.[7] The Family Court correctly applied the law and considered the best interest factors under 13 *Del. C.* § 722. We therefore affirm the Family Court's decision that it was in the Daughter's best interests for the parents to have joint legal custody with the Father having primary residential placement.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED.

BY THE COURT:

*/s/ Karen L. Valihura*
Justice

---

[7] Supr. Ct. R. 8 ("Only questions fairly presented to the trial court may be presented for review...."); *Zappa v. Logan*, 2013 WL 4538215, at *1 (Del. Aug. 23, 2013) (declining to consider evidence offered by appellant on appeal to refute allegations of abuse where the appellant failed to appear for Family Court hearing or file a motion to reopen the Family Court's judgment).