IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MATTHEW J. JACKSON, SR., | § | |
| | § | No. 302, 2017 |
| Respondent Below, | § | |
| Appellant, | § | Court Below—Family Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | File No.      17-01-1TK |
| DIVISION OF FAMILY SERVICES, | § | Petition No. 17-00543 |
| | § | |
| Petitioner Below, | § | |
| Appellee. | § | |

Submitted: February 14, 2018
Decided:    March 29, 2018

Before **STRINE**, Chief Justice; **VAUGHN** and **TRAYNOR**, Justices.

## O R D E R

This 29th day of March 2018, upon consideration of the parties' briefs and the record on appeal, it appears that:

(1)    Matthew Jackson[1] has appealed the Family Court's June 28, 2017 Order terminating his parental rights over his minor child.  On appeal, Jackson claims that no statutory basis for termination exists,[2] and that termination is not in the child's best interests.  For the reasons set forth below, we affirm.

(2)    On November 19, 2015, Jackson returned home from work to find his three-month-old child soaking wet with urine, and the child's mother ("Mother")

---

[1] A pseudonym was assigned on appeal pursuant to Supr. Ct. R. 7(d).
[2] *See generally* 13 *Del. C.* § 1103(a).

"drunk and passed out."[3] Jackson woke up Mother, and an argument ensued. After law enforcement arrived, Mother was arrested for a crime of domestic violence against Jackson, and the Division of Family Services ("DFS") took emergency custody of the child.

(3) On November 30, 2015, the Family Court determined that probable cause existed for the child to remain in DFS custody. DFS eventually arranged for foster care, to which the child readily adapted. As a result, DFS filed a Motion to be Excused from Case Planning, seeking to forgo reunification services under 13 *Del. C.* § 1103(d). The Family Court granted DFS's motion on June 14, 2016.

(4) On May 16, 2017, DFS filed a Petition for Termination of Parental Rights against both Jackson and Mother. The Family Court held a hearing on May 16, 2017. Mother did not appear. After hearing testimony from Jackson and several family-services employees, and after reviewing social reports, prior Involuntary Termination of Parental Rights Orders against Jackson and Mother, and certified criminal histories, the Family Court granted DFS's termination-of-parental-rights petition as to both Jackson and Mother.

(5) This Court's review of a Family Court decision includes both the facts and the law.[4] We review conclusions of law *de novo*.[5] Factual findings will not be

---

[3] App. to Office of the Child Advocate's Ans. Br. at C8.
[4] *Mundy v. Devon*, 906 A.2d 750, 752 (Del. 2006).
[5] *Id.*

disturbed unless clearly erroneous and unsupported by the record.[6] If the Family Court correctly applied the pertinent law, we review for an abuse of discretion.[7]

(6) In reviewing a termination-of-parental-rights petition, the Family Court must employ a two-step analysis.[8] First, there must be clear and convincing proof that a statutory basis for termination as set forth in 13 *Del. C.* § 1103(a) exists. Second, there must be a determination—again, by clear and convincing evidence—that termination is in the best interest of the child.[9]

(7) In this case, the Family Court found three statutory bases for termination: (i) failure to adequately plan;[10] (ii) a felony offense against a child;[11] and (iii) previous involuntary termination of parental rights.[12] Jackson challenges each.

(8) The Family Court concluded that DFS proved by clear and convincing evidence the statutory ground for termination set forth in 13 *Del C.* § 1103(a)(5)— failure to plan for the child's physical needs or the mental and emotional health and development of the child. Jackson claims that this failure-to-plan finding was clearly erroneous pointing to evidence that he had made plans for reunification, identified

---

[6] *Id.*

[7] *Parson v. Parson*, 2002 WL 442399, at *1, 793 A.2d 310 (Del. 2002) (Table).

[8] *Shepherd v. Clemens*, 752 A.2d 533, 536–37 (Del. 2000).

[9] *Powell v. Dep't of Servs. for Children, Youth & Their Families*, 963 A.2d 724, 731 (Del. 2008).

[10] 13 *Del. C.* § 1103(a)(4)(a).

[11] 13 *Del. C.* § 1103(a)(5).

[12] 13 *Del. C.* § 1103(a)(6).

daycare facilities close to his home, requested that DFS reconsider their decision not to plan for reunification, and owned a business that provided sufficient financial security to allow him to care for the child.

(9) How the Family Court reached its conclusion that Jackson had failed to plan for the child's needs, health, and development is unclear. As even DFS notes, "the Family Court does not discuss its reasoning at length for this statutory ground."[13] It appears as though the court determined that the combination of (i) the rebuttable presumption that sex offenders shall not be awarded child custody under 13 *Del. C.* §724A and (ii) the court's June 14, 2006 order excusing DFS under 13 *Del. C.* § 1103(d) from its obligation to provide reunification and related services, effectively precluded Jackson from planning for the child. But nothing in the termination-of-parental rights statute or the cases construing it supports such a conclusion in the absence of other clear and convincing evidence. To be sure, an unrebutted presumption under 13 *Del. C.* § 724A may be an insurmountable obstacle to an award of custody and an independent ground for termination of parental rights, and the absence of DFS's services might make planning more difficult. But they are not, without more, sufficient to establish a separate statutory basis —under the guise of failure to plan—for the termination of parental rights. To the extent the Family Court's finding of a failure to plan was based solely on the §724A presumption and

---

[13]Appellee Division of Family Services Answering Br. 21.

the June14, 2006 order without regard to other evidence, it is erroneous as a matter of law. Otherwise, as a finding of fact, it is not supported by clear and convincing evidence.

(10)  Nevertheless, the Family Court correctly concluded that other statutory grounds for termination exist:  First, the court found that, Jackson's 1979 Unlawful Sexual Intercourse conviction was a basis for termination under 13 *Del. C.* § 1103(a)(4)a. of Title 11.  Jackson acknowledges this conviction, but argues that he "does not believe that such conviction, from when he was technically still a  minor, was meant to be applied to terminate his parental rights nearly forty years later."[14] From the record, however, it appears that Jackson was convicted of this offense as an adult.[15]  And, in any event, 13 *Del. C.* §1103(a)(4)a. draws no distinction between convictions based on crimes committed as a minor and those committed as an adult, nor does it contain a staleness exception.  The record supports the Family Court's determination that this conviction provides a basis for termination of parental rights under § 1103(a)(4)a.

(11)  The Family Court, relying upon prior Family Court orders, also found that DFS had established the statutory ground for termination set forth in 13 *Del C.* § 1103(a)(6), more particularly, that "[t]he respondent's parental rights over a sibling

---

[14] Appellant's Opening Br. at 12.
[15] App. to Appellant Division of Family Services Answering Br. at B170.

of the child who is the subject of the petition have been involuntarily terminated in a prior proceeding." Jackson disagrees, claiming that because the Family Court's previous Termination of Parental Rights Orders improperly relied on Jackson's 1979 conviction to satisfy the prior-felony-conviction statutory ground, DFS cannot rely on the Family Court's previous Involuntary Termination of Parental Rights Orders to satisfy the prior-involuntary-termination statutory ground.[16] Because, as discussed above, the predicate of Jackson's argument lacks merit, so too does its conclusion.

(12) Although two statutory bases for termination exist, DFS was also required to prove "by clear and convincing evidence that termination of parental rights is essential to the child's welfare."[17] In making that determination, the Family Court must consider all relevant factors including: (i) the wishes of the child's parents; (ii) the wishes of the child; (iii) the child's interaction with his parents and others who may affect his best interests; (iv) the child's adjustment to his home, school, and community; (v) the mental and physical health of all individuals involved; (vi) whether the parents have complied with their rights and

---

[16] 13 *Del. C.* § 1103(a)(6).
[17] *In re Burns*, 519 A.2d 638, 643 (Del. 1986).

6

responsibilities to their child; (vii) evidence of domestic violence; and (viii) the parents' criminal history.[18]

(13) The Family Court carefully reviewed the § 722 factors and found that (ii) (child's wishes), (iii) (interaction with parents and others), (iv) (adjustment to home, school, etc.), (vii) (domestic violence), and (viii) (criminal history) weighed in favor of termination, and factors (i) (parents' wishes), (v) (mental/physical health), and (vi) (parents' compliance) weighed against. Jackson focuses his appeal on factors (vii) (domestic violence) and (viii) (criminal history).

(14) Jackson argues that the Family Court erred in finding that the domestic-violence factor weighed in favor of termination, noting that the Family Court failed to cite any evidence that Jackson perpetrated domestic violence. A review of the record undermines Jackson's claims. In a previous termination, Jackson stated that "domestic violence, including frequent arguing and acts of physical violence, played a large part in the dissolution of [his] second marriage."[19] Moreover, Jackson's relationship with Mother was fraught with "frequent verbal arguments [escalating] into physical altercations,"[20] such as '[busting her lip] with his hand, grabb[ing] her

---

[18] 13 *Del. C.* § 722(a) (listing relevant factors to be considered when determining "the legal custody and residential arrangements for a child in accordance with the best interests of the child.").

[19] *See* App. to Div. of Family Servs. Ans. Br. at B153.

[20] *Id.* at B153-B154.

face, chok[ing] her, and threaten[ing] to kill her."[21]  As such, the record supports the Family Court's domestic-violence determination.

(15)  Finally, Jackson argues that his criminal history should not weigh in favor of termination.  As Jackson has been arrested over nine times and has at least four convictions, we are satisfied that the Family Court did not abuse its discretion in its consideration of this factor in conducting its best-interest analysis.

(16)  In sum, despite our disagreement with the Family Court's failure-to-plan finding, we find that the Family Court's findings that there is a statutory basis for the termination of Jackson's parental rights and that the termination is in the best interest of the child are supported by clear and convincing evidence.  Therefore, the Family Court did not err in concluding that Jackson's parental rights should be terminated.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED.

BY THE COURT:

*/s/ Gary F. Traynor*
Justice

---

[21] *Id.*