IN THE SUPREME COURT OF THE STATE OF DELAWARE

GARY I. STUART, JR.,[1]                      §
                                             § No. 64, 2018
    Respondent/Petitioner Below,         §
    Appellant,                           § Court Below—Family Court
                                             § of the State of Delaware
    v.                                   §
                                             § File No. CK15-02155
OLIVIA STUART,                               § Petition No. 16-15710
                                             §
    Petitioner/Respondent Below,         §
    Appellee.                            §

Submitted: September 21, 2018
Decided: December 5, 2018

Before **VALIHURA**, **VAUGHN**, and **SEITZ**, Justices.

## O R D E R

After consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1)    The appellant, Gary I. Stuart, Jr. ("the Father"), filed this appeal from the Family Court's January 11, 2018 order affirming the Commissioner's September 26, 2017 child support order. We find no error or abuse of discretion in the Family Court's decision. Accordingly, we affirm the Family Court's judgment.

(2)    The appellee, Olivia Stuart ("the Mother") and the Father are the parents of three children, a son born in 2005 and twin daughters born in 2011

---

[1] The Court previously assigned pseudonyms to the parties under Supreme Court Rule 7(d).

(collectively, "the Children"). On May 31, 2016, the Mother filed a petition for child support. After two continuances, the Family Court Commissioner held a hearing on the petition for child support on September 13, 2017. The Mother, who was represented by counsel, and the Father, who was not, testified at the hearing. On September 26, 2017, the Commissioner ordered the Father to pay child support of $2,000.00 a month, which included a current monthly support obligation of $1,773.00 and $227.00 a month in arrears.

(3) On October 4, 2017, the Father filed a request for review of the Family Court Commissioner's order. The Mother argued that the request should be denied. On October 12, 2017, the Father filed an amended request for review. On January 11, 2018, the Family Court entered an order affirming the Commissioner's order. This appeal followed.

(4) This Court's review of a Family Court decision includes a review of both the law and the facts.[2] Conclusions of law are reviewed *de novo*.[3] Factual findings will not be disturbed on appeal unless they are clearly erroneous.[4] The Father's arguments on appeal may be summarized as follows: (i) the Family Court erred in attributing more income to him than the $489.00 per month he receives as a 30% disability payment from the Veteran's Administration; (ii) the Family Court

---

[2] *Mundy v. Devon,* 906 A.2d 750, 752 (Del. 2006).
[3] *Id.*
[4] *Id.*

misstated the record and was biased against him; (iii) the Family Court failed to take into account his monthly contributions to the Children's college funds, a medical expense of $2,751.00 that he paid for one of the Children, and amounts of money that he claims the Mother owes him from property division matters; and (iv) the Family Court erred in excluding income the Mother receives from tenants and Booz Allen Hamilton. After careful review of the parties' briefs and the record, we conclude that these arguments are without merit.

(5) The Family Court may attribute income to a parent in the calculation of child support.[5] Family Court Rule of Civil Procedure 501(c) provides that:

> Unemployment or underemployment either voluntary or due to misconduct or failure to provide sufficient evidence or failure to appear for a hearing or mediation conference may cause income to be attributed. The Court may examine earnings history, employment qualifications and the current job market. The Court may take judicial notice of Department of Labor wage surveys for individual occupations to estimate or corroborate earning capacity.

The Father was unemployed after he left the Air Force in 2014. Rule 501(g) provides that "[p]arents who suffer a loss of income either voluntarily or due to their own misconduct may have their support obligation calculated based upon reduced earnings after a reasonable period of time if the parent earnestly seeks to achieve maximum income capacity."

---

[5] *Sentner v. Sentner*, 799 A.2d 1154, 1161 (Del. 2002).

3

(6) Based on the Father's education (a college degree and a master's in business administration) and his twelve years of Air Force service in the field of medical and health services management, the Family Court Commissioner attributed the Father with income as an entry level health services manager in a civilian position ($33.55 per hour[6] * 40 hours a week * 52 weeks a year or $5,815.00 per month). This was in addition to the $489.00 that the Father received each month from the Veteran's Administration for his 30% disability status. The Family Court Commissioner determined that the salary for an entry level position was appropriate because the Father had been out of the health services industry for several years and had not worked in the civilian sector. The Family Court accepted the Family Court Commissioner's findings. The Father argues that he should not have been attributed with income as an entry level health services manager. He contends that the Family Court disregarded his efforts to seek other employment, failed to consider how his federal whistleblower complaints made it difficult for him to find work, ignored that he was homeless for a while and had to devote substantial time to litigating his whistleblower complaints and Family Court matters,[7] and was inconsistent in the handling of his mental health.

---

[6] The Family Court Commissioner took this rate from the Department of Labor's 2016 Wage Table.

[7] The Family Court matters included the child support proceedings, custody proceedings, and protection from abuse proceedings.

(7) We disagree. The Family Court recognized that the Father had made strenuous but unsuccessful efforts to rejoin the Air Force for more than three years. Although the Father testified that he had applied for numerous, unspecified jobs with the federal government, he could not recall that he had sought employment outside of the Air Force or federal government. The Father's testimony reflects that he was primarily focused on rejoining the Air Force. The Family Court did not err in concluding that the Father's strenuous but unreasonable efforts to rejoin the Air Force did not constitute earnest efforts to achieve maximum income under Rule 501(g).

(8) The Father also argues that the Family Court ignored that he was homeless at one point, but he did not indicate how long he was homeless (based on the child support hearing transcript it appears it may have been for a few months in 2015) or how that affected his ability to find work. Even assuming that the Father's federal whistleblower complaints complicated his efforts to rejoin the Air Force, there is no indication that those complaints would have prevented him from finding employment in the civilian sector. The Father's desire to rejoin the Air Force (despite how unlikely that was as time passed) and the time he spent litigating his federal whistleblower complaints and Family Court matters did not excuse his failure to seek employment commensurate with his education and work experience.

(9) As far as the Father's mental health, the Family Court Commissioner acknowledged that his 30% disability status for an adjustment disorder with anxious features suggested there were mental health issues. The Family Court Commissioner also suggested that the Father explore applying for Social Security Disability benefits. But as the Family Court Commissioner and the Family Court recognized, there was nothing in the record from a medical or mental health professional opining that Father's mental condition limited his ability to work or prevented him from working. The Father testified that his disability status did not preclude him from working fulltime.[8] The fact that the Father's mental health was also an issue in the custody proceedings does not mean the Family Court was required to find that the Father's mental health precluded from him working. Under these circumstances, the Family Court did not err in accepting the Family Court Commissioner's attribution of income as an entry level health services manager in a civilian position to the Father.

(10) The Father next contends that the Family Court Commissioner made false statements and was biased against him. The false statements identified by the

---

[8] On appeal, that Father argues that his disability payment from the Veteran's Administration falls within Rule 501(f), which provides that if "[w]hen a person has been determined to be eligible for Social Security Disability or Supplemental Security Income (SSI), this determination shall be substantive evidence of a disability." The Father did not raise this argument below. Supr. Ct. R. 8 ("Only questions fairly presented to the trial court may be presented for review…."). We also note that Section 501(f) does not refer to Veteran's Administration payments.

6

Father include: (i) that he could have pursued an extension before he left the Air Force but did not do so; (ii) he elected to forego work in other states or work for the federal government; (iii) he was evaluated by the Army, which was one of his former employers; and (iv) he was hospitalized at Dover Behavior Health after he left active service. These statements do not support reversal of the child support order. As far as the statements concerning whether the Father could have pursued an extension with the military and that the Father had foregone employment in other states and with the federal government, the Family Court Commissioner made those statements in describing the Mother's testimony. The transcript of the child support hearing supports the Family Court's acceptance of the Commissioner's conclusion that the Father focused, primarily and unreasonably, on reinstatement in the Air Force. As the Family Court recognized in affirming the Commissioner's decision, the misidentification of the Army as one of the Father's former employers (the Father served in the Air Force, but was evaluated at one point by an Army physician) as well as whether the Father could have applied for an extension in the military did not bear on the Commissioner's conclusions. Similarly, the Commissioner's conclusions did not depend upon the timing of the Father's admission to Dover Behavioral Health.

(11) The record does not support the Father's allegations of bias. The Family Court Commissioner patiently listened to the Father's arguments at the

custody hearing and warned him when he was raising irrelevant issues or rehashing points he had already made. There is nothing in the record to support a rational inference that the Family Court Commissioner was biased against the Father.

(12) The Father next argues that the Family Court failed to reduce his child support obligation by his $150.00 monthly contributions to the Children's college funds, a $2,751.00 medical expense he paid for one of the Children, and other amounts of money that he claims the Mother owes him from property division matters. The Father did not raise the college fund payments he claimed to be making or the property division matters in his objections to the Commissioner's order, so we will address only the medical expense. The Family Court did not err in holding that the Father was not entitled to a credit for the medical expense because parents are equally charged with a child's support and care, which includes payment of medical expenses, under 13 *Del. C.* § 701(a).

(13) Finally, the Father argues that the Family Court Commissioner erred in excluding $500.00 in monthly rent and Booz Allen Hamilton consulting wages the Mother received in 2016 from the Mother's income.[9] As to the $500.00 in monthly rent, the Family Court held that the Commissioner did not err in excluding this from the Mother's income because the Mother was splitting the rent and utilities with

---

[9] The Mother testified that she had not received any pay from Booz Allen Hamilton since October 2016 and did not expect to receive any pay from Booz Allen Hamilton in the future.

8

other people who lived in the house she rented, not renting space in a home that she owned. Under these circumstances, we conclude that the Family Court did not abuse its discretion. We decline to address the exclusion of the Booz Allen Hamilton wages as the Father did not raise this issue in his objections to the Family Court Commissioner's order.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED.

BY THE COURT:

/s/  James T. Vaughn, Jr.
                    Justice