IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| KELLY WHITEWOOD,[1] | § | |
| | § | No. 195, 2019 |
| Petitioner Below, | § | |
| Appellant, | § | Court Below—Family Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | File No. CN11-01624 |
| DEMITRI HENDERSON, | § | Petition No. 18-27283 |
| | § | |
| Respondent Below, | § | |
| Appellee. | § | |

Submitted: September 6, 2019
Decided: November 18, 2019

Before **SEITZ**, Chief Justice; **VALIHURA** and **TRAYNOR**, Justices.

## ORDER

After consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1)    The appellant, Kelly Whitewood ("the Mother"), filed this appeal from a Family Court decision and order, dated April 10, 2019, granting in part and denying in part her petition for visitation.  The Mother and Demetri Henderson ("the Father") are the parents of two sons.  The Mother had primary residential placement of the children until late 2017 when she was ordered to have no contact with the children as a result of pending criminal charges.

---

[1] The Court previously assigned pseudonyms to the parties under Supreme Court Rule 7(d).

(2) On June 14, 2018, after two hearings, the Family Court granted sole custody and primary residential placement of the children to the Father. Based on the pending criminal charges, the neglect of the children while in the Mother's care, and concerns regarding the Mother's mental and physical health, the Family Court found that the Mother's visitation should be limited to weekly one-hour supervised visits with the children at the Visitation Center. The Family Court also ordered the Mother to undergo substance-abuse and mental-health evaluations and to comply with any recommended treatment. The Mother did not appeal the Family Court order.

(1) On September 10, 2018, the Mother filed a petition to modify visitation. She sought unsupervised visitation and additional visits, including three overnight visits a week. On September 27, 2018, the Family Court dismissed the petition. With the assistance of counsel, the Mother filed a petition for reargument. The Family Court granted the motion.

(2) The Family Court held a hearing on the Mother's visitation petition on January 24, 2019. During the hearing, the Family Court heard testimony from the Mother's counselor,[2] the Mother, and the Father. The Mother's counselor testified that she had no concerns about the Mother's mental health or ability to care for the

---

[2] It appears that the audio recording of the counselor's testimony was lost, so (with the agreement of both parties' attorneys) the Family Court judge read her notes of the counselor's testimony into the record.

children, but could not opine on whether supervision of visits was required as she had not seen the children and did not know their needs. The Mother submitted evidence that she was found not guilty of two criminal charges pending at the time of the custody hearing and that the other charged was dismissed.

(3) The parents offered conflicting testimony about how the children were doing and how the children viewed visitation and contact with the Mother. At the Father's request, the Family Court interviewed the children on January 30, 2019. Both children initially indicated that they did not wish to change the visitation schedule, but after additional questioning by the judge, expressed a willingness to try longer, unsupervised visits with the Mother.

(4) On April 10, 2019, Family Court issued a decision granting in part and denying in part the Mother's petition. The Family Court held that, in addition to the weekly-supervised visit, the Mother could have a two-hour unsupervised visit with the children every other week (as well as on their birthdays and holidays) once the younger son's counselor said that he was ready for unsupervised visits.[3] This appeal followed.

---

[3] The older son's visitation was linked to the opinion of the younger son's counselor because the Family Court concluded that it would not be appropriate for the boys to visit separately with the Mother.

3

(5)     This Court's review of a Family Court decision includes a review of both the law and the facts.[4]  Conclusions of law are reviewed *de novo*.[5]  Factual findings will not be disturbed on appeal unless they are clearly erroneous and justice requires they be overturned on appeal.[6]  When the determination of facts turns on a question of the credibility and the acceptance or rejection of the testimony of witnesses appearing before the trier of fact, we will not substitute our opinion for that of the trier of fact.[7]

(6)     On appeal, the Mother argues that the Family Court erred by: (i) only permitting her short and infrequent visitation with the children in violation of 13 *Del. C.* § 728(a); (ii) relying on the older son's hearsay statement about an incident involving the younger son and the maternal grandfather; (iii) failing to order telephone contact with the children in violation of 13 *Del. C.* § 728(b); and (iv) not providing the Mother and the Father equal powers over future visitation changes in violation of 13 *Del. C.* § 701.

(7)     A visitation order "may be modified at any time if the best interests of the child would be served thereby in accordance with the standards set forth in § 728(a) of this title."[8]  Under § 728(a), the Family Court determines visitation

---

[4] *Mundy v. Devon,* 906 A.2d 750, 752 (Del. 2006).
[5] *Id.*
[6] *Id.*
[7] *Wife (J.F.V.) v. Husband (O.W.V, Jr.)*, 402 A.2d 1202, 1204 (Del. 1979).
[8] 13 *Del. C.* § 729(a).

4

"consistent with the child's best interests and maturity, which is designed to permit and encourage the child to have frequent and meaningful contact with both parents unless the Court finds, after a hearing, that contact of the child with 1 parent would endanger the child's physical health or significantly impair his or her emotional development."[9] The best interest factors are set forth in 13 *Del. C.* § 722(a).[10]

(8) The Mother argues that the Family Court violated § 728(a) by severely limiting her contact with the children and providing no basis for the strict restrictions on her visitation. After reviewing the evidence, the Family Court held that until the younger child's counselor opined that he should have unsupervised visitation with the Mother, such unsupervised visitation would significantly impair the child's emotional development. As to the § 722(a) criteria, the Family Court concluded only factor 2—the wishes of the children—weighed in favor of the Mother's petition. The Family Court found that factor 1 (the parents' wishes), factor 7 (evidence of domestic violence), and factor 8 (the criminal history of the parents) were neutral. The Family Court found that factors 3 (the interaction and interrelationship of the children with their parents and relatives), 4 (the children's adjustment to their home, school, and community), 5 (the mental and physical health

---

[9] 13 *Del. C.* § 728(a).

[10] The § 722 factors include: (i) the wishes of the parents; (ii) the wishes of the child; (iii) the interaction of the child with his parents, relatives and any other residents of the household; (iv) the child's adjustment to his home, school, and community; (v) the mental and physical health of all individuals involved; (vi) past and present compliance of the parents with their rights and responsibilities to their child; and (vii) evidence of domestic violence.

5

of all individuals involved), and 6 (past and present compliance by both parents with their rights and responsibilities to the children) weighed in favor of the Father's opposition to the Mother's petition.

(9)     With the exception of the Family Court's incorrect statement that the Father was not required to provide the Mother with information about the children's health and education because he had sole custody,[11] the Family Court did not err in its analysis of the § 722 factors.   Even assuming the older child's statement to the Family Court judge about the Mother's response to an incident involving the maternal grandfather and the younger child was hearsay as the Mother contends, it does not appear that the Family Court relied on that statement in considering the § 722 factors.   The Family Court did note the children's dislike of the maternal grandfather and ordered that the maternal grandfather not be present for visitation. But at that point the children had expressed their dislike of the maternal grandfather based on their personal experiences with him twice to the Family Court judge—in the interview during the custody proceedings and in the interview during the

---

[11] Under § 727(a), each parent, regardless of whether the parents have joint legal custody or one parent has sole legal custody, has the right to receive, upon request, from the other parent all material information about a child's progress in school and medical treatment unless the Family Court finds, after a hearing, that this would endanger a child's physical health or significantly impair her emotional development. The Family Court did not make such a finding when it awarded the Father sole custody of the children and in fact directed the Father to communicate fully with the Mother regarding the children's care and education. In the visitation order, the Family Court did order that the Father provide the Mother with medical information about the children and held that the Mother could contact the children's teachers and physicians about their progress. This was reasonable in light of the parties' difficulties in communicating with each other.

6

visitation proceedings. The Mother's argument that the visitation order violated 13 *Del. C.* § 701 is without merit.

(10) Although the record does not support the amount of unsupervised visitation sought by the Mother, the record also does not support the Family Court's conclusion that unsupervised visitation would significantly impair the younger child's emotional development until his counselor opines that he should have unsupervised visitation. The Family Court reached this conclusion without any documentation or testimony from the younger child's counselor. According to the Father, the counselor refused to testify because she did not want to lose the child's trust.

(11) In light of the children's history of emotional issues, especially the younger child, the Family Court was appropriately concerned about the impact of changing the visitation schedule on the children. We also appreciate that the Family Court did not want to compromise the counselor's rapport with the younger child by ordering the counselor to provide testimony about the child's thoughts. But in the absence of input from the counselor herself, the Family Court did not have a basis for concluding that unsupervised visitation would significantly impair the younger child's emotional development until the counselor indicated that the child is ready for unsupervised visitation. The counselor should be able to offer her view on supervised versus unsupervised visitation without providing details about the child's

7

thoughts and violating the child's trust. We therefore remand this matter for the Family Court to obtain the opinion of the younger child's counselor regarding unsupervised visitation and to consider that opinion in deciding whether the Mother should have unsupervised visitation with the children and, if so, the amount of unsupervised visitation. The Family Court should also address whether the Mother may have telephone contact with the children.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is REVERSED and REMANDED for further proceedings consistent with this Order. Jurisdiction is not retained.

BY THE COURT:

*/s/ Gary F. Traynor*
Justice