IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JULIA PACKWOOD,[1] | § | |
| | § | No. 335, 2019 |
| Respondent Below, | § | |
| Appellant, | § | Court Below—Family Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | File No. CN18-02246 |
| SOPHIA SPELLER, | § | Petition No. 18-21749 |
| | § | |
| Petitioner Below, | § | |
| Appellee. | § | |

Submitted: January 24, 2020
Decided: April 2, 2020

Before **SEITZ**, Chief Justice; **TRAYNOR** and **MONTGOMERY-REEVES**, Justices.

## ORDER

After consideration of the parties' briefs and the record below, it appears to the Court that:

(1)   The respondent below-appellant, Julia Packwood ("the Maternal Grandmother"), filed this appeal from a Family Court order, dated July 8, 2019, granting the petition for third-party visitation filed by the petitioner-below appellee, Sophia Speller ("the Stepmother"). We find no error or abuse of discretion in the Family Court's decision. Accordingly, we affirm the Family Court's judgment.

---

[1] The Court previously assigned pseudonyms to the parties under Supreme Court Rule 7(d).

(2)     Nadine Speller ("the Child"), who was born in 2008, is the daughter of Iris Robbins ("the Mother") and Tom Speller ("the Father").[2]  The Mother suffers multiple sclerosis and lives with the Maternal Grandmother.  Until August 2017, the Child lived with the Mother and the Maternal Grandmother and had visitation with the Father.  The Father, who was battling cancer since 2013, lived with the Stepmother.

(3)     In August 2017, after the Mother quarreled with the Maternal Grandmother and moved out of her house, everyone agreed that the Child should live primarily with the Father and the Stepmother.  The Father, despite his declining health, married the Stepmother in December 2017.  In February 2018, the Family Court entered a custody order in which the Father and the Mother agreed to joint custody with the Child living with the Father during the week and visiting the Mother on the weekends.  The Father died in March 2018.  After the Father's death, the Child returned to live with the Mother (who had returned to the Maternal Grandmother's house).

(4)     In July 2018, the Family Court entered a consent order granting the Maternal Grandmother guardianship of the Child.  The order provided that the Mother would retain joint legal custody of the Child with the Maternal Grandmother.

_____

[2] We assign pseudonyms to the other relevant family members in this appeal.

On July 27, 2018, the Stepmother filed a petition for weekly overnight visitation with the Child. The Mother and the Maternal Grandmother opposed the petition.

(5) The Family Court held a hearing on the Stepmother's petition on March 7, 2019. The Family Court heard testimony from the Stepmother, two of her friends, the Mother, and the Maternal Grandmother. On March 11, 2019, the Family Court interviewed the Child.

(6) In its July 8, 2019 order, the Family Court found that that the Stepmother had a substantial and positive relationship with the Child before the Father's death, visitation with the Stepmother was in the Child's best interest, the Stepmother had demonstrated, by clear and convincing evidence, that the objections to visitation were unreasonable, and the Stepmother had demonstrated, by a preponderance of the evidence, that visitation would not substantially interfere with the Mother's relationship with the Child. The Family Court granted the Stepmother's petition and awarded her visitation with the Child from Friday evening to Sunday evening every other weekend. This appeal followed.

(7) This Court's review of a Family Court decision includes a review of both the law and the facts.[3] Conclusions of law are reviewed *de novo*.[4] Factual findings will not be disturbed on appeal unless they are clearly erroneous.[5] To obtain

---

[3] *Mundy v. Devon,* 906 A.2d 750, 752 (Del. 2006).
[4] *Id.*
[5] *Id.*

third-party visitation, the Stepmother first had to establish that she had a substantial and positive prior relationship with the Child.[6] She then had to establish that such visitation would be in the Child's best interest under 13 *Del. C.* § 722.[7] Finally, in light of the objections to visitation, the Stepmother had to demonstrate by clear and convincing evidence that the objections were unreasonable and by a preponderance of the evidence that visitation would not substantially interfere with the parent/child relationship.[8]

(8) The Maternal Grandmother's arguments on appeal may be summarized as follows: (i) the Family Court erred in finding that the Stepmother had a long-standing relationship with the Child; (ii) the Family Court misstated facts; and (iii) the interview with the Child reveals that the Family Court judge was biased. These arguments are without merit.

(9) At the March 7, 2019 hearing, the Stepmother offered testimony, as well as leases from 2014 to 2016 that contained both her and the Father's names, to support her claim that she had a long-standing, positive relationship with the Father and the Child dating back to 2013. According to the testimony of the Mother and the Maternal Grandmother, the Stepmother did not resume her relationship with the Father or meet the Child until 2016. They also downplayed any relationship that the

---

[6] 13 *Del. C.* § 2410(a)(1).
[7] 13 *Del. C.* § 2412(a)(1).
[8] 13 *Del. C.* § 2412(a)(2)(d).

Stepmother had with the Child. When the determination of facts turns on a question of the credibility and the acceptance or rejection of the testimony of witnesses appearing before the trier of fact, we will not substitute our opinion for the trier of fact.[9] It was well-within the Family Court's discretion to find the testimony of the Stepmother's witnesses concerning the duration and extent of her relationship with the Child more credible than the testimony of the Maternal Grandmother and Grandmother. The record supports the Family Court's conclusion that the Stepmother had a substantial and positive previous relationship with the Child.

(10) The Maternal Grandmother next contends that the Family Court misstated certain facts. Most of the alleged misstatements are based on the Family Court's acceptance of testimony from witnesses other than the Maternal Grandmother and the Mother. As previously stated, we will not substitute our judgment for that of the trier of fact on issues of witness credibility.[10] The Maternal Grandmother is correct that there was no testimony at the March 7, 2019 hearing to support the Family Court's statement that the Stepmother immediately called to notify her of the Father's death, but this mistake is minor and not material to the Family Court's conclusions.

---

[9] *Wife (J.F.V.) v. Husband (O.W.V., Jr.)*, 402 A.2d 1202, 1204 (Del. 1979).
[10] *See supra* n.9.

(11) Finally, the Maternal Grandmother argues that the Child interview reveals that the Family Court judge was biased. She contends that the Family Court ignored the Child's statements that she did not miss the Stepmother or want to see her and pressured the Child to say otherwise. A review of the entire transcript, not just the portions selected by the Maternal Grandmother, refutes the Maternal Grandmother's claim. The Child's comments reflect that her paternal grandmother, the Mother, and the Maternal Grandmother regularly shared their negative views and comments about the Stepmother with her. The Child did initially claim not to miss the Stepmother or want to see her, but then made it clear that she well-aware of her relatives' opposition to visitation. When the Family Court asked the Child what she wanted, the Child volunteered that she would like to alternate her time between the Maternal Grandmother and the Stepmother—one week with one and then one week with the other. The transcript does not reflect that the Family Court judge was biased or pressuring the Child, but that she was trying to understand the feelings and wishes of a child who had recently lost her father and who did not want to upset her family members. The Maternal Grandmother's claims concerning the Family Court judge are without merit.

(12) Having carefully considered the parties' submissions and the record on appeal, we conclude that the Family Court order granting visitation to the

Stepmother should be affirmed.  The Family Court correctly applied the law and did not abuse its discretion in granting the Stepmother's petition for visitation.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED.

BY THE COURT:

*/s/ Gary F. Traynor*
Justice