IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| CALEB ZIMMERMAN,[1] | § | |
| | § | No. 208, 2025 |
| Respondent Below, | § | |
| Appellant, | § | Court Below—Family Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | File No. CN24-02432 |
| FELICIA DA COSTA, | § | Petition No. 24-09489 |
| | § | |
| Petitioner Below, | § | |
| Appellee. | § | |

Submitted: January 30, 2026
Decided: April 6, 2026

Before **TRAYNOR**, **LEGROW**, and **GRIFFITHS**, Justices.

## ORDER

Upon consideration of the parties' briefs, the record on appeal, and the motion for costs and attorneys' fees, it appears to the Court that:

(1)     The appellant, Caleb Zimmerman ("Father") filed this appeal from a Family Court order resolving the petition for custody filed by the appellee, Felicia Da Costa ("Mother").  As set forth below, we affirm the Family Court's judgment but deny Mother's motion for costs and attorneys' fees under Supreme Court Rule 20(f).

---

[1] The Court previously assigned pseudonyms to the parties under Supreme Court Rule 7(d).

(2) The parties are the parents of a child born in 2017. They lived together with the child until 2023. In April 2024, Mother filed a petition for custody. She sought sole legal custody and primary residential placement of the child. Under an interim stipulation and order entered in May 2024, the parties agreed to joint legal custody of the child with the child residing with Father from Sunday afternoon to Wednesday afternoon and with Mother from Wednesday evening until Sunday afternoon.

(3) The Family Court scheduled a custody hearing for December 17, 2024. After Father's counsel withdrew from representation, Father moved for a continuance of the custody hearing. The Family Court granted the motion and rescheduled the hearing for April 1, 2025.

(4) At the hearing, the Family Court heard testimony from Mother, Father, two employees from the Child's aftercare program, and several of Father's relatives and friends. The Family Court later issued a written decision granting sole custody and primary residential placement of the child to Mother. Father was granted visitation with the child every other weekend from Friday night to Tuesday morning and every Monday night during the school year. Summer break was divided equally between the parties. This appeal followed.

(5)     The Court's review of a Family Court decision includes a review of both the law and the facts.[2]  Conclusions of law are reviewed *de novo*.[3]  Factual findings will not be disturbed on appeal unless they are clearly erroneous.[4]

(6)     On appeal, Father argues that the Family Court's judgment should be reversed because: (i) the custody hearing was unfair; (ii) he mistakenly relied on the advice of the Family Court judge's secretary that he did not need an attorney and could represent himself in the proceeding; and (iii) it was not in the child's best interests for Mother to have sole legal custody and primary residential placement. Mother contends that Father's appeal is frivolous and seeks costs and attorneys' fees under Supreme Court Rule 20(f).

(7)     Father contends that the custody hearing was unfair because Mother failed to provide him with her exhibits and the identity of her witnesses as required by the scheduling orders.  He also asserts that the Family Court did not allow him to question his witnesses completely.  These claims are without merit.

(8)     During the custody hearing, Father objected that Mother failed to provide him with her exhibits as required by the scheduling orders.  The scheduling orders required the parties to exchange exhibits seven days before the hearing, which

---

[2] *Mundy v. Devon,* 906 A.2d 750, 752 (Del. 2006).

[3] *Id.*

[4] *Id.*

3

was originally scheduled for December 17, 2024 and then continued until April 1, 2025. Mother's counsel stated that she provided the exhibits to Father by the December deadline and again by the March deadline through a file-sharing program because the exhibits were too large to send by email. Father claimed that he was unable to access the exhibits. Counsel also indicated that the exhibits were included in the discovery provided to Father's former counsel. The Family Court overruled Father's objection, finding that Mother had complied with the scheduling order and that Father could have obtained the documents from his former counsel.

(9) The Family Court did not abuse its discretion in finding that Mother complied with the scheduling order and in denying Father's objections to her exhibits. Mother's counsel made the exhibits available to Father before the hearing. There is no indication that Mother or her counsel were responsible for Father's inability to access those exhibits.

(10) As to Father's claim that Mother failed to identify her witnesses before the hearing as required by the scheduling orders, we review this claim for plain error because Father did not raise it in the Family Court.[5] Plain error is error that is "so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of

_____

[5] Del. Supr. Ct. R. 8 ("Only questions fairly presented to the trial court may be presented for review; provided, however, that when the interests of justice so require, the Court may consider and determine any question not so presented.").

4

the trial process."[6] Mother's witnesses consisted of herself and two employees of the child's school who worked in the aftercare program. Father had the opportunity to cross-examine all of Mother's witnesses and has not shown any plain error.

(11) Father's claim that the Family Court prevented him from fully questioning his witnesses is also subject to plain-error review because he did not raise it below.[7] Under the Delaware Uniform Rules of Evidence, a "court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to: (1) make those procedures effective for determining the truth; (2) avoid wasting time; and (3) protect witnesses from harassment or undue embarrassment."[8]

(12) Father initially indicated that he intended to call twelve or thirteen witnesses—mostly consisting of his relatives—at the hearing. After the judge expressed concern regarding the number of witnesses for the second half of a one-day hearing, Father said he would only be asking each witness two or three questions. The judge continued to express concern about the number of witnesses allotted for the time remaining, and Father said he would call six or seven witnesses. Father ultimately called eight witnesses, including himself, and primarily asked them

---

[6] *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986).

[7] *See supra* n.5.

[8] D.R.E. 611(a).

about his interactions and relationship with the child. Father fails to identify any testimony that he did not have the opportunity to elicit from the witnesses he called, and he has not shown plain error in the Family Court's control over the presentation of witnesses.

(13) Father next contends that the Family Court's decision should be reversed because he mistakenly relied on the advice of the judge's secretary that he did not need an attorney and could represent himself in the proceeding. We review this claim for plain error because Father did not raise it in the Family Court.[9]

(14) Father points to nothing in the record that supports this claim. Father initially had counsel in the custody proceeding, but his counsel moved to withdraw after a breakdown in communications and Father's failure to comply with the agreed-upon terms of representation. The court granted counsel's motion to withdraw and Father's subsequent request for a continuance of the original hearing date.

(15) At the beginning of the rescheduled hearing, the Family Court granted Father's request that his brother, who was a non-Delaware attorney, sit with Father for emotional support during the hearing as long as he did not communicate with Father. Shortly thereafter, Father objected that Mother's counsel did not provide her

---

[9] *See supra* n.5.

exhibits to him. Mother's counsel described her production of the exhibits to Father and how Father complained to the judge's secretary about the production. In addressing Father's objection, the judge noted that Father had sent numerous emails to her secretary. The judge stated that her secretary was not a judge or attorney and could not tell Father what to do. Father indicated that he understood this. Under these circumstances, Father has not shown any plain error in connection with his self-representation.

(16) Finally, Father argues that the custody order was not in the child's best interests. The Family Court determines "the legal custody and residential arrangements for a child in accordance with the best interests of the child."[10] The factors for determining the best interests of the child are set forth in 13 *Del. C.* § 722.[11]

(17) The Family Court appropriately considered the best-interest factors set forth in Section 722 in light of the evidence presented, which included testimony about Father's history of volatile interactions with Mother and staff at the child's

---

[10] 13 *Del. C.* § 722.

[11] The best-interest factors set forth in § 722 include: (i) the wishes of the parents; (ii) the wishes of the child; (iii) the interaction of the child with his parents, relatives, and any other residents of the household; (iv) the child's adjustment to his home, school, and community; (v) the mental and physical health of all individuals involved; (vi) the past and present compliance of the parents with their rights and responsibilities to their child; (vii) evidence of domestic violence; and (viii) the criminal history of any party or any other resident of the household.

school, dentist, and pediatrician. Father contends that the testimony of the aftercare program director was untrue, but we will not substitute our judgment for that of the trier of fact on issues of witness credibility.[12] The Family Court acted within its broad discretion in determining that the best-interest factors weighed in favor of Mother having sole custody and primary residential placement of the child.

(18) Mother has moved for costs and attorneys' fees, arguing that Father's appeal is frivolous. Under Rule 20(f), this Court may award costs and reasonable expenses, including attorneys' fees, to an appellee in a frivolous appeal. After consideration of Father's arguments on appeal and the record, we conclude that this appeal is not frivolous.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED. The motion for fees and costs is DENIED.

BY THE COURT:

*/s/ Abigail M. LeGrow*
Justice

---

[12] *Wife (J.F.V.) v. Husband (O.W.V., Jr.)*, 402 A.2d 1202, 1204 (Del. 1979).

8