IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| LESLIE TANNER,[1] | § | |
| | § | |
| Respondent Below, | § | No. 277, 2015 |
| Appellant, | § | |
| | § | Court Below—Family Court |
| v. | § | of the State of Delaware |
| | § | |
| ERIC TOLBERT, | § | File No. CN13-0364 |
| | § | Petition No. 13-09570 |
| Respondent Below, | § | |
| Appellee. | § | |

Submitted: June 10, 2016
Decided: August 9, 2016

Before **STRINE**, Chief Justice; **HOLLAND** and **SEITZ**, Justices.

# **O R D E R**

This 9th day of August 2016, upon consideration of the parties' briefs and the record below, it appears to the Court that:

(1)     The appellant, Leslie Tanner ("the Mother"), filed this appeal from the Family Court's May 4, 2015 amended custody order granting Mother and the appellee, Eric Tolbert ("the Father"), joint legal custody and residential placement of their children on a week on, week off basis. We find no error or abuse of discretion in the Family Court's decision. Accordingly, we affirm the Family Court's judgment.

---

[1] The Court previously assigned pseudonyms to the parties under Supreme Court Rule 7(d).

(2) The Mother and the Father are the parents of a son born in February 2003 ("the Son") and a daughter born in August 2006 ("the Daughter"). In 2009, the parties entered a consent order granting sole custody and primary residence of the children to the Mother. The Father had parental contact as agreed by the parties.

(3) On April 1, 2013, the Father filed a petition for joint custody. The Father claimed that the Mother was interfering with his visitation with the children. The Mother answered the petition and responded to the Father's allegations. On April 14, 2014, the parties entered into an Interim Custody Stipulation and Order ("Interim Order"). In the Interim Order, the parties agreed to joint custody of the children and shared residential placement of the children on a week on, week off basis.

(4) The Family Court held a hearing on the Father's custody petition on February 19, 2015. The Father asked for the Interim Order to become the final order, while the Mother asked for joint legal custody, primary placement, and for the children to have visitation with the Father three weekends per month. Both parents were represented by counsel at the hearing. The Family Court heard testimony from multiple parties, including the parents, the Father's wife, and the assistant principal of the Son's school. The Family Court interviewed the children, who expressed a desire to continue the existing schedule, on February 24, 2015.

(5) In a written order dated March 9, 2015, the Family Court concluded that all of the best interest factors under 13 *Del. C.* § 722 were neutral as to the parents. The Family Court held that it was in the best interests of the children for the parents to have joint custody and shared residential placement of the children on a week on, week off basis. On March 18, 2015, the Mother filed a motion for reargument. The Family Court denied the motion on May 4, 2015. The Family Court also entered an amended custody order to correct errors in the March 9, 2015 order. This appeal followed.

(6) This Court's review of a Family Court decision includes a review of both the law and the facts.[2] Conclusions of law are review*ed de novo*.[3] Factual findings will not be disturbed on appeal unless they are clearly erroneous.[4] We will not substitute our opinion for the inferences and deductions of the trial judge if those inferences are supported by the record.[5] "The judgment of the Family Court must be affirmed when the inferences and deductions upon which it is based are supported by the record and are the product of an orderly and logical deductive process."[6]

---

[2] *Mundy v. Devon,* 906 A.2d 750, 752 (Del. 2006).
[3] *Id.*
[4] *Id.*
[5] *Wife (J.F.V.) v. Husband (O.W.V., Jr.)*, 402 A.2d 1202, 1204 (Del. 1979).
[6] *Mundy*, 907 A.2d at 752-53 (citing *Solis v. Tea*, 468 A.2d 1276, 1279 (Del.1983)).

(7) Under Delaware law, the Family Court is required to determine legal custody and residential arrangements for a child in accordance with the best interests of the child.[7] The criteria for determining the best interests of a child are set forth in 13 *Del. C.* § 722. Under § 722, the Family Court must consider all relevant factors including: (i) the wishes of the parents regarding the child's custody and residential arrangements; (ii) the wishes of the child regarding her custodians and residential arrangements; (iii) the interaction and interrelationship of the child with her parents, grandparents, siblings, persons cohabitating in the relationship of husband and wife with a parent of the child, and any other residents of the household or persons who may significantly affect the child's best interests; (iv) the child's adjustment to her home, school, and community; (v) the mental and physical health of all individuals involved; (vi) past and present compliance by both parents with their rights and responsibilities to the child under 13 *Del. C.* § 701; (vii) evidence of domestic violence; and (viii) the criminal history of any party or any resident of the household. On appeal, the Mother contends that the Family Court erred in its consideration of the second, fourth, sixth, seventh, and eighth factors. The Mother also contends that the Family Court failed to consider other relevant factors in her favor.

---

[7] 13 *Del. C.* § 722.

(8) Under the second factor of § 722, the Family Court considers the wishes of the child regarding her custodians and residential arrangements. The Mother acknowledges that the children told the Family Court they wished to continue the week on, week off schedule with both parents, but argues that children may want things that are not in their best interests. We do not dispute this, nor did the Family Court. The Family Court's decision reflects that it considered all of the § 722 factors, not just the children's wishes, in deciding it was in the children's best interests for their parents to share joint custody and residential placement. The Family Court did not err in its consideration of the second factor of § 722.

(9) Under the fourth factor of § 722, the Family Court considers the child's adjustment to her home, school, and community. The Mother argues that the Family Court erred in its consideration of this factor because it overlooked the Father's failure to address the Son's academic and behavioral issues at school. The Family Court heard testimony from the assistant principal of the Son's school regarding the Son's grades and misbehavior as well as testimony from the Father, his wife, and the Mother about how they have handled the Son's grades and misbehavior. The Family Court's conclusion that the fourth factor was neutral because both parents were concerned about the Son's education and that neither parent was at fault, even if there were issues, is supported by the record and cannot be disturbed on appeal.

5

(10) To the extent the Mother claims the Family Court erred when it stated that the Father testified he had recently attended a parent-teacher conference with one of the Daughter's teachers, she is correct. The Father's wife testified that the Father had a parent-teacher conference with one of the Daughter's teachers. The Father testified that he had to cancel a parent-teacher conference with one of the Son's teachers. This minor misstatement of fact is not material enough to undermine the Family Court's rational determination that the fourth factor was neutral as to the parties.

(11) The Mother next contends that the Family Court erred in its consideration of the sixth factor of § 722, past and present compliance by both parents with their rights and responsibilities to their children, because it overlooked the Father's lack of parental guidance and failure to pay child support. As to the Father's parental guidance, the Family Court heard testimony regarding the parties' different parenting styles. The Family Court adverted to this testimony in describing the Father's involvement in ensuring that the children did their homework and crediting that the Father took an interest in their academic progress. Parents can have different approaches and yet both care about and meet the needs of children. The Family Court's determination that the Father was appropriately engaged in parenting the children has an adequate grounding in the record and cannot be second-guessed by us. As to the Father's failure to pay child support,

6

the Family Court was well-aware, and critical of, this failure. The Family Court noted, however, in its denial of the motion for reargument that: (i) shared residential placement meant that the Father would contribute to the children's living expenses while they were with him, thereby alleviating some of the burden to the Mother; and (ii) a custody proceeding was not the proper venue to punish the Father for his failure to pay child support by removing the children from his home after almost a year of shared residential placement. The Family Court also noted that the Mother's filing of four unsuccessful petitions for protection from abuse ("PFA") against the Father in less than two years was indicative of her refusal to work with or co-parent with the Father in violation of her responsibilities as a parent.

(12) Contrary to the Mother's contentions, *D.S.W. v. A.J.N.*[8] and *J.W. v. A.W.*[9] do not dictate a different outcome in this case. In *D.S.W.*, the Family Court highlighted a father's failure to pay child support in denying his request for shared residential placement. Unlike this case, the father in *D.S.W.* was employed throughout the time he failed to pay child support, the children's wishes were unknown because they were not interviewed, and the mother had filed a successful PFA petition against the father, not four unsuccessful petitions. In *J.W.*, the Family Court found shared residency was not in the best interests of the children

---

[8] 2012 WL 5844907 (Del. Fam. Ct. Aug. 17, 2012).
[9] 2010 WL 4275274 (Del. Fam. Ct. Aug. 30, 2010).

where the father not only failed to pay child support, but also had substance abuse problems and had consented to entry of a PFA order.

(13) Like the Family Court, we do not condone the Father's failure to pay child support. The Father's failure to pay child support is unacceptable. But under the factual circumstances of this case, which include the Mother's filing of four unsuccessful PFA petitions in less than two years, we conclude that the Family Court did not err in its overall consideration of the parents' past and present compliance with their rights and responsibilities to their children in determining the children's best interests.

(14) The Mother next contends that the Family Court erred in its consideration of the seventh factor of § 722, evidence of domestic violence, because it overlooked a no-contact order and a pending harassment charge against the Father. A no-contact order was entered in the harassment case, which was pending in the Court of Common Pleas at the time of the custody hearing.[10] In its consideration of the seventh factor, the Family Court recognized that the Mother had filed four unsuccessful PFA petitions against the Father. Although the Family Court did not refer to the harassment case in its consideration of the seventh factor, the amended custody order and denial of the motion for reargument reflect that the

---

[10] We take judicial notice of the Court of Common Pleas docket in Cr. ID No. 1407024343. According to the docket, the State entered a *nolle prosequi* on all of the charges in May 2015.

Family Court was aware of the no-contact order and took it into account in reaching its decision.

(15) The Mother next contends that the Family Court erred in its consideration of the eighth factor of § 722, the criminal history of any party, because it overlooked the Father's July 2013 guilty plea to criminal contempt of a protective order. This contention is incorrect. The amended custody order reflects that the Family Court acknowledged the Father's 2013 guilty plea in concluding the parties' criminal history did not raise concerns as to their abilities to care for the children.

(16) Finally, the Mother contends that the Father's residence outside of the children's school district, the suspension of the Father's driver's license for failure to pay child support, and the parties' inability to communicate were factors in her favor. The transcript of the February 19, 2015 hearing reflects that the Family Court heard testimony on all of these issues. After the Family Court determined that it was in the children's best interests to continue the week on, week off schedule with their parents, the Family Court limited communication between the parents to communication about the children by email or through the Father's wife, which the Mother had indicated was acceptable at the February 19, 2015 hearing. The Family Court's conclusion that continuation of the week on, week off schedule was in the best interests of the children is supported by the record.

(17) Under the circumstances, we find no error or abuse of discretion in the Family Court's ruling. The Family Court correctly applied the law and considered the best interest factors under 13 *Del. C.* § 722. We therefore affirm the Family Court's decision that it was in the children's best interests for the parents to have joint custody and shared residential placement of the children on a week on, week off basis.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED.

BY THE COURT:

*/s/ Leo E. Strine, Jr.*

Chief Justice